# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

CHRIS PARTRIDGE,

    Plaintiff,

v.

UNIVERSITY OF MICHIGAN,
UNIVERSITY OF MICHIGAN
BOARD OF REGENTS, and
WARDE MANUEL, in his official
and individual capacities,

    Defendants.

Case No. 5:26-cv-10821-SDK-CI

Hon. Shalina D. Kumar

---

Elizabeth K. Abdnour (P78203)
Sara Dagher (P87077)
ABDNOUR WEIKER LLP
325 E. Grand Blvd., Ste. 250
East Lansing, MI 48823
(517) 994-1776
liz@education-rights.com
sara@education-rights.com

Mark A. Weiker (P85381)
Jessica N. Moore (OH: 0101098)
ABDNOUR WEIKER LLP
262 S. Third St.
Columbus, OH 43215
(614) 745-2001
mark@education-rights.com
jessica@education-rights.com

Brian M. Schwartz (P69018)
D. Kyle Bierlein (P78278)
MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.
*Attorneys for Defendants*
150 W. Jefferson, Ste. 2500
Detroit, MI 48226
(313) 963-6420
schwartzb@millercanfield.com
bierlein@millercanfield.com

---

## DEFENDANTS' MOTION TO DISMISS
## PLAINTIFF'S COMPLAINT WITH PREJUDICE

Defendants University of Michigan,[1] Regents of the University of Michigan, and Warde Manuel move to dismiss Plaintiff's Complaint in its entirety and with prejudice pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The Complaint should be dismissed for several reasons:

1.      The University and Manuel, in his official capacity, are protected by sovereign immunity. And Manuel is entitled to qualified immunity for any personal capacity claims, particularly where the Complaint lacks allegations showing his personal involvement in the violation of a clearly established constitutional right.

2.      Plaintiff fails to state a due process claim (Count I) because he does not adequately allege that the decision to terminate his employment implicated protected property or liberty interests were he does not have a right to continued employment. And, in any case, Plaintiff was provided more than sufficient process.

3.      Plaintiff fails to state a claim for a failure to train and supervise (Count II) against Manuel because there is no constitutional duty to train and supervise employees in accordance with National Collegiate Athletic Association ("NCAA") rules. Plaintiff also does not sufficiently allege that Manuel was personally

---

[1] Plaintiff improperly named the "University of Michigan" as a Defendant. The Board of Regents "constitute[s] the body corporate" with the legal capacity to "be[] sued" on behalf of the University under Michigan law. MCL 390.4; *see* Mich. Const. 1963, art 8, § 5. Any other entity is an improper defendant. *See, e.g., Ali v Univ of Michigan Health Sys-Risk Mgmt*, No. 11-13913, 2012 WL 3112419, at *3 (E.D. Mich. May 4, 2012), *R&R adopted*, 2012 WL 3110716 (E.D. Mich. July 31, 2012).

responsible for any alleged constitutional deprivation. Nor does he adequately plead that the training provided was insufficient, deliberate indifference, or a causal nexus between the alleged inadequate training and his termination.

4.     Plaintiff fails to state a First Amendment retaliation claim (Count III). Plaintiff's speech was not on a matter of public concern. Additionally, Plaintiff was not speaking as a private citizen when he spoke with a student-athlete. Instead, he was speaking in his capacity as a coach, in direct violation of a University directive not to communicate about a pending NCAA investigation. Finally, even if Plaintiff could plead that he was speaking as a citizen on a matter of public concern, the University's interests in ensuring that work-related directives are followed in the context of an ongoing investigation outweigh Plaintiff's speech interests.

5.     Pursuant to Local Rule 7.1(a), counsel for Defendants sent a detailed email to Plaintiff's counsel, describing the basis of this motion. Counsel for both parties also met and conferred via Zoom. Plaintiff's counsel denied concurrence.

WHEREFORE, Defendants asks the Court to grant this Motion and dismiss the Complaint in its entirety and with prejudice.

3

Dated: May 11, 2026        Respectfully submitted,

*/s/ Brian M. Schwartz*
Brian M. Schwartz (P69018)
Kyle Bierlein (P78278)
Miller, Canfield, Paddock and Stone, P.L.C.
150 W. Jefferson, Ste. 2500
Detroit, MI 48226
(313) 963-6420
schwartzb@millercanfield.com
bierlein@millercanfield.com
*Counsel for Defendants*

4

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CHRIS PARTRIDGE,

    Plaintiff,

v.

UNIVERSITY OF MICHIGAN,
UNIVERSITY OF MICHIGAN
BOARD OF REGENTS, and
WARDE MANUEL, in his official
and individual capacities,

    Defendants.

Case No. 5:26-cv-10821-SDK-CI

Hon. Shalina D. Kumar

---

Elizabeth K. Abdnour (P78203)
Sara Dagher (P87077)
ABDNOUR WEIKER LLP
325 E. Grand Blvd., Ste. 250
East Lansing, MI 48823
(517) 994-1776
liz@education-rights.com
sara@education-rights.com

Mark A. Weiker (P85381)
Jessica N. Moore (OH: 0101098)
ABDNOUR WEIKER LLP
262 S. Third St.
Columbus, OH 43215
(614) 745-2001
mark@education-rights.com
jessica@education-rights.com

Brian M. Schwartz (P69018)
D. Kyle Bierlein (P78278)
MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.
*Attorneys for Defendants*
150 W. Jefferson, Ste. 2500
Detroit, MI 48226
(313) 963-6420
schwartzb@millercanfield.com
bierlein@millercanfield.com

---

**BRIEF IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT WITH PREJUDICE**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF ISSUES PRESENTED ........................................... viii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................ ix

I.    INTRODUCTION ............................................................. 1

II.   BACKGROUND ............................................................... 2

    A.   Plaintiff's Employment .................................................. 3

    B.   Plaintiff's Termination ................................................. 3

    C.   Plaintiff's Grievance ................................................... 4

III.  STANDARD OF REVIEW .................................................... 6

IV.   ARGUMENT ................................................................. 7

    A.   Plaintiff's Claims Are Barred by Immunity ............................. 7

        1.   The Eleventh Amendment Bars Plaintiff's § 1983 Claims Against the University and Manuel in His Official Capacity ............................................................ 7

        2.   Qualified Immunity Bars § 1983 Claims Against Manuel ........ 9

    B.   Plaintiff Does Not State a Procedural Due Process Claim (Count I) ................................................................ 11

        1.   Plaintiff Does Not Have a Protected Property Interest in Continued Employment ............................................. 11

        2.   Plaintiff Received Constitutionally Adequate Process ........... 13

    C.   Plaintiff Fails to State a Claim for Failure to Train and Supervise Against Manuel (Count II) .................................. 15

        1.   Plaintiff Does Not Sufficiently Allege Manuel Was Personally Responsible for the Alleged Constitutional Deprivation ......................................................... 16

        2.   Plaintiff Does Not Sufficiently Allege a Constitutional Duty to Train or that Any Training Provided Was Inadequate ......................................................... 16

        3.   Plaintiff Does Not Plead Deliberate Indifference .............. 17

        4.   Plaintiff's Alleged Injury Was Not Related to Manuel's Training of Athletic Department Staff ............................ 17

i

**TABLE OF CONTENTS**
(continued)

**Page**

      D.     Plaintiff Fails to State a First Amendment Retaliation Claim (Count III)........................................................................................18

V.     CONCLUSION........................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*16630 Southfield Ltd. P'ship v. Flagstar Bank,*
 F.S.B., 727 F.3d 502 (6th Cir. 2013) ....................................................................10

*Ali v Univ of Michigan Health Sys-Risk Mgmt,*
 No. 11-13913, 2012 WL 3112419 (E.D. Mich. May 4, 2012), *R&R*
 *adopted*, 2012 WL 3110716 (E.D. Mich. July 31, 2012) .....................................2

*U.S. ex rel. Angelo v. Allstate Ins. Co.,*
 106 F.4th 441 (6th Cir. 2024) ................................................................................7

*Ashcroft v. al-Kidd,*
 563 U.S. 731 (2011) ...............................................................................................9

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ....................................................................................6, 10, 15

*Bailey v. City of Ann Arbor,*
 860 F.3d 382 (6th Cir. 2017) .................................................................................7

*Bambach v. Moegle,*
 92 F.4th 615 (6th Cir. 2024) ..................................................................................9

*Bd. Of Regents v. Roth,*
 408 U.S. 564 (1972).............................................................................................12

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007)..........................................................................................6, 10

*Chilingrian v. Boris,*
 882 F.2d 200 (6th Cir. 1989) ...............................................................................12

*Cleveland Bd. of Educ. v. Loudermill,*
 470 U.S. 532 (1985).............................................................................................14

*Com. Money Ctr., Inc. v. Ill. Union Ins. Co.,*
 508 F.3d 327 (6th Cir. 2007) ............................................................................7, 14

*Connick v. Thompson*,
  563 U.S. 51 (2011)..................................................................ix, 17

*Ctr. for Bio-Ethical Reform v. Napolitano*,
  648 F.3d 365 (6th Cir. 2011) ................................................7

*Cunningham v. Shelby Cty.*,
  994 F.3d 761 (6th Cir. 2021) ...............................................10

*Dambrot v. Cent. Mich. Univ.*,
  55 F.3d 1177 (6th Cir. 1995) ................................... ix, 19, 21

*DeCrane v. Eckart*,
  12 F.4th 586 (6th Cir. 2021) ................................................23

*Dixon v. Univ. of Toledo*,
  702 F.3d 269 (6th Cir. 2012) ...............................................18

*Does v. Whitmer*,
  69 F.4th 300 (6th Cir. 2023) ..................................................6

*Farhat v. Jopke*,
  370 F.3d 580 (6th Cir. 2004) .................................20, 21, 24

*Fledderjohann v. Celina City Sch. Bd. of Educ.*,
  825 F. App'x 289 (6th Cir. 2020)........................................20

*Fox v. Traverse City Area Pub. Sch. Bd. of Educ.*,
  605 F.3d 345 (6th Cir. 2010) ...............................................21

*Garcetti v. Ceballos*,
  547 U.S. 410 (2006)................................................ ix, 19, 20, 23

*Gillis v. Miller*,
  2016 WL 337454 (E.D. Mich. Jan. 28, 2016), *aff'd*, 845 F.3d 677
  (6th Cir. 2017)......................................................................22, 25

*Gregory v. City of Louisville*,
  444 F.3d 725 (6th Cir. 2006) ...............................................15

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982)..................................................................9

iv

*Hedgepeth v. Britton*,
    152 F.4th 789 (7th Cir. 2025) .............................................................24

*Helphenstine v. Lewis Cty.*,
    60 F.4th 305 (6th Cir. 2023) ........................................................11, 16

*Holbrook v. Dumas*,
    658 F. App'x 280 (6th Cir. 2016)........................................................20

*Houchens v. Beshear*,
    850 F. App'x 340 (6th Cir. 2021) .......................................................11

*Johnson v. Daniels*,
    769 F. Supp. 230 (E.D. Mich. 1991), *aff'd*, 70 F.3d 1272 (6th Cir.
    1995) ....................................................................................................11

*Johnson v. Moseley*,
    790 F.3d 649 (6th Cir. 2015) ................................................. ix, 10, 11

*Kaplan v. Univ. of Louisville*,
    10 F.4th 569 (6th Cir. 2021) ........................................................11, 12

*Kerchen v. Univ. of Mich.*,
    100 F.4th 751 (6th Cir. 2024) .....................................................ix, 8, 9

*Kollaritsch v. Mich. State Univ. Bd. of Trs.*,
    944 F.3d 613 (6th Cir. 2019) ..........................................................ix, 9

*Lane v. Franks*,
    573 U.S. 228 (2014)............................................................. ix, 19, 20

*Lapides v. Bd. of Regents of Univ. Sys. of Ga.*,
    535 U.S. 613 (2002)...............................................................................8

*Lytle v. Malady*,
    579 N.W.2d 906 (Mich. 1998).......................................................ix, 13

*Mathews v. Eldridge*,
    424 U.S. 319 (1976)......................................................................ix, 14

*Mayhew v. Town of Smyrna, Tennessee*,
    856 F.3d 456 (6th Cir. 2017) .............................................................21

v

*McCormick v. Miami Univ.*,
   693 F.3d 654 (6th Cir. 2012) .................................................................8

*Meriwether v. Hartop*,
   992 F.3d 492 (6th Cir. 2021) ...............................................................19

*Monell v. Dep't of Soc. Servs*,
   436 U.S. 658 (1978)................................................................................8

*Mosier v. Evans*,
   90 F.4th 541 (6th Cir. 2024) ................................................................15

*Nolan v. Detroit Edison Co.*,
   991 F.3d 697 (6th Cir. 2021) ...........................................................3, 14

*Odom v. Univ. of Mich.*,
   2017 WL 2117978 (E.D. Mich. May 16, 2017) ...........................ix, 12

*Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*,
   455 F.3d 690 (6th Cir. 2006) .................................................. ix, 15, 17

*Perry Ed. Ass'n v. Perry Loc. Educators' Ass'n*,
   460 U.S. 37 (1983)................................................................................ix

*Phillips v. Roane County*,
   534 F.3d 531 (6th Cir. 2008) .................................................. ix, 11, 15

*Pickering v. Bd. of Educ.*,
   391 U.S. 563 (1968).......................................................................*passim*

*Rankin v. McPherson*,
   483 U.S. 378 (1987)........................................................................24, 25

*Rood v. Gen. Dynamics Corp.*,
   444 Mich. 107 (1993) ...........................................................................12

*Russell v. Lundergan-Grimes*,
   784 F.3d 1037 (6th Cir. 2015) ...............................................................6

*Russo v. City of Cincinnati*,
   953 F.2d 1036 (6th Cir.1992) ...............................................................15

*Schilcher v. Univ. of Arkansas,*
387 F.3d 959 (8th Cir. 2004) ...............................................................21

*Stanalajczo v. Perry,*
794 F. Supp. 3d 513 (E.D. Mich. 2025) ...........................................21

*Weisbarth v. Geauga Park Dist.,*
499 F.3d 538 (6th Cir. 2007) .......................................................20, 23

*Will v. Mich. Dep't of State Police,*
491 U.S. 58 (1989)...................................................................ix, 8

**Statutes**

42 U.S.C. 1983..........................................................................*passim*

MCL 390.4 ...........................................................................................2

**Other Authorities**

Fed. R. Civ. P. 12(b)(1).......................................................................6

Fed. R. Civ. P. 12(b)(6).......................................................................6

Mich. Const. 1963, Article 8, § 5.........................................................2

U.S. Const., Amend. I ...............................................................*passim*

U.S. Const., Amend. XI .................................................................6, 7, 8

U.S. Const., Amend. XIV .....................................................................11

## Statement of Issues Presented

I. Are Plaintiff's claims against the University and Warde Manuel, in his official capacity, barred by sovereign immunity?

II. Is Warde Manuel entitled to qualified immunity to the extent he is sued in his individual capacity?

III. Should the Court dismiss Plaintiff's procedural due process claim (Count I) because Plaintiff does not plausibly plead a protected interest in his continued employment and, in any event, he received more than adequate due process?

IV. Should the Court dismiss Plaintiff's failure to train and supervise claim (Count II) because: there is no constitutional duty to train and supervise employees in accordance with National Collegiate Athletic Association ("NCAA") rules; Plaintiff does not sufficiently allege that Manuel was personally responsible for any alleged constitutional deprivation; and Plaintiff does not adequately plead that the training provided was insufficient, deliberate indifference, or a causal nexus between the alleged inadequate training and his termination.

V. Should the Court dismiss Plaintiff's First Amendment retaliation claim (Count III) because the alleged speech was not on a matter of public concern, Plaintiff was speaking in his role as a public employee and not a private citizen, and because the University's interests in ensuring that work-related directives are followed in the context of an ongoing investigation outweigh Plaintiff's speech interests?

**<u>Controlling or Most Appropriate Authority</u>**

***Sovereign and qualified immunity:***

*Johnson v. Moseley*, 790 F.3d 649 (6th Cir. 2015)

*Kerchen v. Univ. of Mich.*, 100 F.4th 751 (6th Cir. 2024)

*Kollaritsch v. Mich. State Univ. Bd. of Trs.*, 944 F.3d 613 (6th Cir. 2019)

*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)

***Due Process claims:***

*Lytle v. Malady*, 579 N.W.2d 906 (Mich. 1998)

*Mathews v. Eldridge*, 424 U.S. 319 (1976)

*Odom v. Univ. of Mich.*, 2017 WL 2117978 (E.D. Mich. May 16, 2017)

***Failure to train and supervise:***

*Connick v. Thompson*, 563 U.S. 51, 62, (2011)

*Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690 (6th Cir. 2006)

*Phillips v. Roane County*, 534 F.3d 531 (6th Cir. 2008)

***First Amendment claims:***

*Dambrot v. Cent. Mich. Univ.*, 55 F.3d 1177 (6th Cir. 1995)

*Garcetti v. Ceballos*, 547 U.S. 410 (2006).

*Lane v. Franks*, 573 U.S. 228 (2014).

*Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968)

*Perry Ed. Ass'n v. Perry Loc. Educators' Ass'n,* 460 U.S. 37 (1983)

## I.      Introduction.

The University of Michigan's ("University") football program is one of the most recognizable brands in sports. Employees must comply with National Collegiate Athletic Association ("NCAA"), Big Ten Conference, and University rules and regulations. When employees fail to do so, significant repercussions and penalties can be levied against the University. While the University supports a tradition of free speech and encourages its athletic coaches to support its student-athletes, coaches must still comply with all rules, regulations, and internal directives.

Plaintiff was a University football coach. Shortly after the NCAA opened an investigation, University legal counsel and Athletic Department management met with football staff and instructed them not to discuss the ongoing investigation with student-athletes. Ignoring this directive, Plaintiff admits to discussing the investigation with a student-athlete. As a result, Plaintiff was terminated. Although Plaintiff was an at-will employee, he was provided an opportunity to grieve his termination, which was ultimately denied.

The Complaint suffers from several flaws. First, the University and Manuel, in his official capacity, are entitled to sovereign immunity. Manuel is also entitled to qualified immunity in his individual capacity.

Next, Plaintiff does not plead a cognizable due process violation because he was employed at-will and at the pleasure of the Athletic Director. Thus, he did not

1

have a constitutionally protectible interest. Regardless, Plaintiff received adequate process through the grievance hearing.

Plaintiff's failure to train and supervise claim is equally flawed. There is no constitutional duty requiring Manuel to train employees in accordance with NCAA requirements. And even if there were, the Complaint lacks factual allegations showing that any training and supervision was insufficient or did not follow NCAA requirements. Plaintiff also does not adequately plead that Manuel was personally involved in any constitutional deprivation, deliberate indifference, or a causal nexus between any alleged failure to train (which apparently, under Plaintiff's theory, led to the NCAA investigation) and his termination (which resulted from Plaintiff violating a directive not to speak with student-athletes on a specific topic).

Finally, Plaintiff's First Amendment retaliation claim lacks merit because Plaintiff spoke as a public employee on a matter that was not of public concern. As a result, his speech was not protected. In any event, the University's interests in ensuring that work-related directives are followed in the context of an ongoing investigation outweigh Plaintiff's speech interests.

## II.   Background.

Consistent with the applicable standard of review, this Motion is based on the Complaint's allegations and documents to which those allegations refer. Those documents are properly considered because they are referred to in the Complaint and

central to the claims. *Nolan v. Detroit Edison Co.*, 991 F.3d 697, 707 (6th Cir. 2021). Where exhibits "contradict[] allegations in the complaint, rendering them implausible, 'the exhibit trumps the allegations.'" *Id.*

### A.     Plaintiff's Employment.

Plaintiff was most recently hired by the University as a Defensive Analyst effective February 3, 2023. (ECF No. 1, Compl, ¶¶ 53-65; Ex 1, MOU.)[2] A Memorandum of Understanding ("MOU") outlined the terms of his employment. (Ex 1). The MOU stated that "Your employment is at-will and may be terminated with or without cause." (*Id.*) Although Plaintiff was employed at-will, the MOU provided that if he was terminated without cause, he would be paid his base salary for the remainder of the term (i.e., through January 31, 2024). (*Id.*) Additionally, Plaintiff's employment was "subject to [his] satisfactory performance of [his] duties as determined by the Head Football Coach and Athletic Director." (*Id.*) He was also required to comply with the NCAA, Big Ten Conference, and University rules, regulations, policies, interpretations, and by-laws. (*Id.*)

### B.     Plaintiff's Termination.

During the 2023 Football season, the NCAA began to investigate the University's football program. (ECF No. 1, Compl, ¶77.) The investigation surrounded a rogue former football staff employee, Connor Stalions, who allegedly

---

[2] The MOU is referred to and quoted extensively in the Complaint.

3

orchestrated a scouting scheme. (*Id*., ¶80.)

On November 13, 2023, University Senior Associate General Counsel Senior Associate General Counsel and Chief Counsel for Athletics Debra Kowich and Athletic Department Executive Assistant Doug Gnodtke held a meeting with all football employees, including Plaintiff. (*Id.*, ¶94.) Kowich directed employees not to communicate with football players about the pending investigation. (*Id*., ¶95.)

Shortly after receiving this directive, Plaintiff was approached by a football player who asked his coach (Plaintiff) for advice regarding his upcoming interview with the NCAA. (*Id*., ¶103.) In violation of the directive, Plaintiff spoke with the player about the investigation. (*Id*.)

On or around November 17, 2023, Plaintiff met with Manuel and Gnodtke. (*Id.*, ¶¶122-131.) During the meeting, Manuel advised Plaintiff that he was being terminated from his position with the football program based on his failure to comply with the directive. (*Id*., ¶126.) That same day, a letter was sent to Plaintiff by Gnodtke memorializing their meeting. (*Id*., ¶132. *See also id.*, ¶20).

## C.     Plaintiff's Grievance.

Shortly after his termination, Plaintiff filed a grievance. (Compl, ¶20; Ex 2, Grievance.) Plaintiff's grievance asserts he was terminated "without cause in violation of my contract." (*Id*.) He acknowledges, however, that Manuel stated "that he was firing me effective immediately because I disobeyed a directive to not

4

communicate with a player about the current NCAA investigation." (*Id.*) Next, Plaintiff's grievance provides his rationale for why he disobeyed the directive:

> I was approached by student athletes who were extremely nervous and shook up by the interviews that were taking place. **My role as a mentor to them is to calm them down**. My Colleagues and I worked together to help calm the athletes in the investigation because the manner that the investigation was being allowed to operate was intimidating to the athletes. **The same athletes that we are tasked to protect and guide in all aspects of their lives**. **When something happens at the University the athletes come to us first**, the parents of these athletes call us first. To ask us not to acknowledge them or to turn them away goes against everything we are taught as coaches. (*Id*. (emphasis added).)

A hearing was held on February 27, 2024, in which Plaintiff provided written evidence, and shared his side of the story. (*See* Ex 3, 3/8/24 Grievance Determination; ECF No. 1, Compl, ¶20 (referring to the 3/8/24 letter).)

After the hearing, the University Review Committee concluded that Plaintiff was not entitled to a Disciplinary Review Conference ("DRC") because SPG 201.12 specifically excludes "those whose employment agreement states that they serve at the pleasure of a particular University official." (Ex 3, 3/8/24 Letter (quoting SPG 201.12)).[3] The Committee found that Plaintiff's February 7, 2023 MOU placed Plaintiff outside the scope of the SPG. (*Id.*) The Committee noted that Plaintiff had an opportunity to respond and defend himself, explaining:

> Although you were not entitled to a DRC, the grievance hearing did

---

[3] SPG 201.12 is available at https://spg.umich.edu/policy/201.12 and a copy is attached as Exhibit 4.

afford you the opportunity to share your perspective on the matter. Your conversation with the student athlete including your admission that you advised a student-athlete to contact an attorney prior to meeting with an NCAA investigator did violate the directive shared at the November 13, 2023 meeting to not communicate with student-athletes about the investigation or interviews. The committee also learned that guidance was provided at the November 13, 2023 meeting on how to respond to student-athlete queries, specifically to advise that you were unable to discuss the situation and refer them back to Doug Gnodtke, Elizabeth Heinrich, or Debbie Kowich. Moreover, the fact that the directive was not placed in writing did not excuse you from following the oral directive. The committee agrees that you failed to satisfactorily perform your duties and were appropriately relieved of your duties at the behest of the Athletic Director. (*Id.*)

## III. Standard of Review.

A complaint may be dismissed for "lack of subject-matter jurisdiction" under Federal Rule of Civil Procedure 12(b)(1). Eleventh Amendment sovereign immunity is a jurisdictional defense under Rule 12(b)(1). *Does v. Whitmer*, 69 F.4th 300, 305 (6th Cir. 2023); *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully"; rather, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court "accept[s] well-pleaded factual

allegations (as well as reasonable inferences from those allegations) in the complaint as true," but "need not credit 'a legal conclusion couched as a factual allegation' or a 'naked assertion devoid of further factual enhancement.'" *U.S. ex rel. Angelo v. Allstate Ins. Co.*, 106 F.4th 441, 448 (6th Cir. 2024). A complaint that does not provide sufficient factual detail or the "when, where, in what or by whom" to support conclusory allegations fails to state a claim. *Ctr. for Bio-Ethical Reform v. Napolitano*, 648 F.3d 365, 373 (6th Cir. 2011).

"[W]hen a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.,* 508 F.3d 327, 335–36 (6th Cir. 2007). "[A] court ruling on a motion to dismiss may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *Bailey v. City of Ann Arbor,* 860 F.3d 382, 386 (6th Cir. 2017) (emphasis omitted) (quotation omitted)

## IV.   Argument.

### A.   Plaintiff's Claims Are Barred by Immunity.

#### 1.   The Eleventh Amendment Bars Plaintiff's § 1983 Claims Against the University and Manuel in His Official Capacity.

The Eleventh Amendment "forbids a plaintiff from suing a state, a state agent, or a state instrumentality for monetary damages in federal court unless that state has consented to suit, or unless Congress has clearly and expressly abrogated the state's

immunity to suit." *Kerchen v. Univ. of Mich.*, 100 F.4th 751, 761 (6th Cir. 2024). Moreover, "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent" such that Plaintiff's claims against Manuel in his official capacity are subject to dismissal for the same reasons. *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 690 n.55 (1978). *See also Kerchen*, 100 F.4th at 761 (stating that claims against University employee "in his official capacity are construed as asserted against Michigan itself").

The University is a state entity cloaked in sovereign immunity. *Kerchen*, 100 F.4th at 761. Since the University has not waived its immunity, the Eleventh Amendment precludes any recovery, because Plaintiffs cannot "directly su[e] a State in federal court." *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012).

Additionally, § 1983 allows for liability only against a "person" who "depriv[es]" someone of any federal "rights, privileges, or immunities" while acting "under color of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002). Here, Plaintiff asserts § 1983 due process claims against Manuel in his official capacity, seeking various categories of damages. (ECF No. 1, PageID.39–46, ¶¶188–223 and "Relief Requested.") Because such relief is

8

not available, Plaintiff's § 1983 claims against the University and Manuel in his official capacity are barred by sovereign immunity.

### 2.      Qualified Immunity Bars § 1983 Claims Against Manuel.

"Qualified immunity shields government officials from standing trial for civil liability in their performance of discretionary functions, unless their actions violate clearly established rights." *Kollaritsch v. Mich. State Univ. Bd. of Trs.*, 944 F.3d 613, 626 (6th Cir. 2019). "The immunity serves dual values: ensuring that wronged individuals can vindicate their constitutional rights while simultaneously reducing the social costs that result from subjecting public officials to increased litigation, like the distractions officials may face in contending with numerous lawsuits and the deterrent effect such litigation might have on otherwise capable people who choose not to enter public office." *Bambach v. Moegle*, 92 F.4th 615, 622 (6th Cir. 2024). A decision on qualified immunity at the earliest stage of litigation is vital to vindicate its protection against unnecessary litigation. *Kerchen*, 100 F.4th at 761.

Plaintiff bears the burden of showing that Manuel is not entitled to qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This requires him to plausibly allege facts showing "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow*, 457 U.S. at 818). The Court has discretion "to decide which prong of the

9

qualified immunity equation to tackle first." *Cunningham v. Shelby Cty.*, 994 F.3d 761, 764 (6th Cir. 2021).

Plaintiff fails to plead a constitutional violation by Manuel, let alone a violation of a clearly established right. Although his name appears throughout the Complaint, Plaintiff merely describes meetings that occurred or actions that Manuel may have taken, without explaining how Manuel violated a clearly established constitutional right.[4] For example, while Plaintiff claims that Manuel failed to train and supervise, he does not identify a constitutional right to have Manuel train personnel on NCAA regulations. Similarly, he does not identify a clearly established constitutional right to disregard an employer's work directives. Thus, dismissal is required. *See Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (plaintiff must show how each defendant "through his or her own individual actions, *personally* violated plaintiff's rights under clearly established law") (emphasis in original).

Additionally, Plaintiff cannot sue based solely on Manuel's supervisory status. "Personal participation is a *sine qua non* of individual capacity §1983 suits;

---

[4] Allegations about Manuel made "upon information and belief" must be disregarded under *Iqbal/Twombly*. (ECF No. 1, Compl, ¶¶ 75-76, 116-120, 133, 143-144, 148(d), 148 (f), 152); *16630 Southfield Ltd. P'ship v. Flagstar Bank*, F.S.B., 727 F.3d 502, 506 (6th Cir. 2013) ("upon information and belief" allegations "are precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told us to ignore when evaluating a complaint's sufficiency.) This includes Plaintiff's speculation that he was terminated because Manuel offered to terminate Plaintiff in exchange for a quid-pro-quo from the Big Ten. (ECF No. 1, Compl, ¶¶ 119-120).

10

*respondeat superior* is not within the purview of §1983 liability." *Johnson v. Daniels*, 769 F. Supp. 230, 234 (E.D. Mich. 1991), *aff'd*, 70 F.3d 1272 (6th Cir. 1995). Rather, Plaintiff must show that Manuel "encouraged the specific incident of misconduct or in some other way directly participated in it." *Phillips v. Roane County*, 534 F.3d 531, 543 (6th Cir. 2008). Courts dismiss claims where there was no evidence of active, personal involvement. *See Johnson*, 790 F.3d at 653; *Helphenstine v. Lewis Cty.*, 60 F.4th 305, 321 (6th Cir. 2023) (supervisory liability claim failed where "claim rests entirely on [defendant's] purported failure to act").

Ultimately, Plaintiff fails to allege specific conduct committed by Manuel that violated a clearly established constitutional right.

### B. Plaintiff Does Not State a Procedural Due Process Claim (Count I).

A procedural due process claim requires Plaintiff first to plead a constitutionally protected property interest.[5] *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 577 (6th Cir. 2021). He must then adequately plead that he was deprived of the procedures necessary to protect it. Plaintiff's claims fail at both steps.

#### 1. Plaintiff Does Not Have a Protected Property Interest in Continued Employment.

Not every public employee has a protected property interest in employment.

---

[5] To the extent that the Complaint asserts a substantive due process claim, it fails. "[T]he right to maintain public employment [is not] … a substantive due process right specifically protected under the Fourteenth Amendment." *Houchens v. Beshear*, 850 F. App'x 340, 343–44 (6th Cir. 2021).

Instead, "courts identify property interests by reference to independent sources of entitlement such as state law or a contract between the parties." *Id.* "But neither a 'unilateral expectation' to enjoy the alleged property interest nor an 'abstract need or desire for it' is enough." *Id.* (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). "A public employee does not have a property interest in continued employment when his position is held at the will and pleasure of his superiors and when he has not been promised that he will only be terminated for good cause." *Odom v. Univ. of Mich.*, 2017 WL 2117978, at *5 (E.D. Mich. May 16, 2017) (quoting *Chilingrian v. Boris*, 882 F.2d 200, 203 (6th Cir. 1989)).

Here, the MOU detailing the terms and conditions of Plaintiff's employment states that "[y]our employment is at will and may be terminated with or without cause." (ECF No. 1, PageID.14, ¶62; Ex 1). The MOU also confirms that Plaintiff served at the pleasure of his superiors because his employment was subject to "[his] satisfactory performance of [his] duties as determined by the Head Football Coach and Athletic Director."[6] (Ex 1).

The MOU does not require that *both* the Head Football Coach and the Athletic Director determine that Plaintiff's employment was not satisfactory. In

---

[6] To the extent Plaintiff argues that the MOU is not enforceable because it was not signed by anyone at UM, (ECF No. 1, Page ID.13, ¶ 57), he still fails to identify a right to continued employment. *Rood v. Gen. Dynamics Corp.*, 444 Mich. 107, 116 (1993) ("[e]mployment contracts for an indefinite duration are presumptively terminable at the will of either party for any reason or for no reason at all").

12

other words, the MOU does not provide either the Head Football Coach or the Athletic Director with veto power of a termination decision. Instead, because there is no language in the MOU establishing that Plaintiff could only be terminated for cause, Plaintiff's employment remained "at will." *Lytle v. Malady*, 579 N.W.2d 906, 911 (Mich. 1998) ("A lack of specificity of policy terms or provisions, or a policy to act in a particular manner as long as the employer so chooses, is grounds to defeat any claim that a recognizable promise in fact has been made.")

Plaintiff's belief that the MOU is "contradictory" because it contains clear at-will language and also states that he will be paid the remainder of his salary if he is terminated without cause is misplaced. (ECF No. 1, PageID.14, n2). The MOU does not promise that Plaintiff will only be terminated for cause. Instead, the MOU provides for the payment of salary for the remainder of the term "[i]n the event of a without cause termination." (Ex 1.) In other words, the MOU expressly contemplates that Plaintiff may be terminated "without cause" and "at will," while providing salary continuation for a limited period of time if his termination is without cause. (*Id.*)

Because Plaintiff fails to plausibly plead that his employment was anything other than at-will, his procedural due process claims must be dismissed.

### 2.    Plaintiff Received Constitutionally Adequate Process.

Even if Plaintiff could plead a protected property interest in continued

13

employment, he still received more than adequate process. An employee's right to due process must be balanced with the employer's interest in removing employees who violate its policies. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). Thus, a hearing does not have to comply with rigid or elaborate procedures and instead depends on the importance of the interest at stake, so long as it provides notice and a chance to be heard. *Id*.; *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Here, Plaintiff filed a "grievance regarding his termination." (ECF No. 1, Compl, ¶20.) And he had an opportunity to challenge his termination. As Plaintiff admits, the Grievance Review Committee held a hearing, allowed Plaintiff to submit written materials that the Committee reviewed, and issued its decision denying his appeal. (Ex 2, Grievance; Ex 3, 3/8/24 Grievance Determination).[7]

Plaintiff's belief that the Committee "got it wrong," (ECF No. 1, Compl, ¶ 22), does not plead a due process violation. Due process does not entitle Plaintiff to a certain result. It only entitles him to notice and an opportunity to be heard. The process afforded to Plaintiff was more than adequate. Thus, Plaintiff fails to state a procedural due process claim.

---

[7] The grievance and the grievance determination are properly considered because they are referred to in the Complaint and central to Plaintiff's claims. (ECF No. 1, Compl, ¶20); *Nolan*, 991 F.3d at 707; *Com. Money Ctr., Inc.*, 508 F.3d 327, 335-36.

14

**C.    Plaintiff Fails to State a Claim for Failure to Train and Supervise Against Manuel (Count II).**

Plaintiff has failed to adequately plead sufficient facts to support a § 1983 claim for failure to train and supervise. A supervisory official is not liable for the acts of his or her subordinates under a theory of *respondeat superior* or vicarious liability. *Iqbal*, 556 U.S. at 677. For Manuel to be liable, he must be personally responsible for the deprivation of a constitutional right. *Phillips*, 534 F.3d at 543 ("A supervisor is not liable pursuant to § 1983 for failing to train unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending [employee]."). A "mere failure to act" is insufficient. *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006).

Additionally, a failure to train claim requires Plaintiff to plead the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of [Manuel's] deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006); see also *Russo v. City of Cincinnati,* 953 F.2d 1036, 1046 (6th Cir.1992). A failure to train claim requires a plaintiff to show a complete disregard of a "duty to train." *Mosier v. Evans*, 90 F.4th 541, 549 (6th Cir. 2024)

### 1.      Plaintiff Does Not Sufficiently Allege Manuel Was Personally Responsible for the Alleged Constitutional Deprivation.

Plaintiff fails to adequately allege that Manuel was personally responsible for the deprivation of a constitutional right. For example, he alleges that Manuel, as Harbaugh's supervisor, "was aware that Harbaugh was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Plaintiff." (ECF No. 1, PageID.42, ¶207.) But mere awareness of actions of others is legally insufficient. *Helphenstine*, 60 F.4th at 321 (failure to act insufficient). Even so, there are no plausible, non-conclusory factual allegations of Manuel's awareness of whatever conduct Plaintiff believes Harbaugh was engaged in. Nor are there any allegations that Manuel authorized or approved Harbaugh's actions.

### 2.      Plaintiff Does Not Sufficiently Allege a Constitutional Duty to Train or that Any Training Provided Was Inadequate.

Plaintiff's failure to train claim focuses on Manuel's alleged failure to train staff "in accordance with NCAA requirements." (ECF No. 1, PageID.41, ¶206). But he fails to point to any constitutional requirement for Manuel to train staff in accordance with a private organization's rules.

Plaintiff's claim also fails because his allegations are conclusory. He asserts that it was Manuel's "job to ensure that all Michigan athletics employees were properly trained and fulfilling compliance requirements," (*id.*, ¶176), but does not assert any facts regarding the training that employees received, why it was

16

inadequate, or how it could have prevented the harm he experienced. Nor does he explain what training he believes Manual should have provided.

### 3. Plaintiff Does Not Plead Deliberate Indifference.

To plead deliberate indifference, Plaintiff allege a pattern of similar constitutional violations by untrained employees. *Connick v. Thompson*, 563 U.S. 51, 62 (2011). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* Here, Plaintiff includes no plausible allegations of deliberate indifference. He does not identify any conduct by employees similar to that which he believes Harbaugh (or others) engaged in, such that Manuel would have been on notice that there was a need to train. To the contrary, the Complaint describes a unique investigation into "sign-stealing" that is not alleged to have ever occurred at the University or elsewhere. Thus, Plaintiff fails to offer sufficient facts to plead that Manuel acted with the deliberate indifference required to support his failure to train claim.

### 4. Plaintiff's Alleged Injury Was Not Related to Manuel's Training of Athletic Department Staff.

Finally, Plaintiff did not plead facts that any alleged inadequate training caused his injury. *Ellis ex rel. Pendergrass*, 455 F.3d at 700. Plaintiff's "injury" does not stem from any inadequate training of Athletic Department staff that may have led to an NCAA investigation. His own allegations confirm he was terminated

17

because of his failure to comply with directives not to discuss the ongoing investigation with student-athletes.

There is no "affirmative causal link between Defendant Manuel's actions and inactions and the constitutional infringements inflicted upon Plaintiff," as Plaintiff misleadingly asserts. (ECF No. 1, PageID.42, ¶210). Instead, it requires several implausible logical leaps to conclude that a failure to train harmed Plaintiff. At the very least, Plaintiff would need to plead that inadequate training led a bad actor to take specific actions, which then led to an investigation, which then led Plaintiff to disregard a directive not to discuss the investigation with student-athletes, and which then led to his termination. Simply put, Plaintiff fails to plead factual content that allows the Court to draw any reasonable inference between any alleged failure to train and his termination.

### D. Plaintiff Fails to State a First Amendment Retaliation Claim (Count III).

To state a retaliation claim, Plaintiff must plausibly allege that he: "(1) engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; [and] (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by [his] protected conduct." *Dixon v. Univ. of Toledo*, 702 F.3d 269, 274 (6th Cir. 2012) (internal quotation marks omitted). Plaintiff does not plead the first or third elements.

18

In the context of public employment, courts employ a two-part test to determine whether speech is protected. *Dambrot v. Cent. Mich. Univ.*, 55 F.3d 1177, 1186 (6th Cir. 1995). First, the court determines whether the statement constitutes speech on a matter of public concern. *Id*. If so, step two requires an analysis of whether the employee's speech interests outweighs the interest of the employer in "promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).

Importantly, "free-speech rules apply differently when the government is doing the speaking. And that remains true even when a government employee is doing the talking." *Meriwether v. Hartop*, 992 F.3d 492, 503–04 (6th Cir. 2021). "When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). This is so because of the "the government's countervailing interest in controlling the operation of its workplaces." *Lane v. Franks*, 573 U.S. 228, 236 (2014). "Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Garcetti*, 547 U.S. at 418.

As a result, "[w]hereas speech *as a citizen may* trigger protection, ... 'when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does

19

not insulate their communications from employer discipline.' " *Lane*, 573 U.S. at 237 (quoting *Garcetti*, 547 U.S. at 421) (emphasis added). In assessing whether an employee was acting as an agent of the government, and thus engaging in unprotected speech, *Garcetti* teaches that the ultimate question is whether the speech at issue "owes its existence to a public employee's professional responsibilities[.]" *Garcetti*, 547 U.S. at 421-22. The inquiry is a "practical one[,]" *id.* at 424-25, meaning that courts consider "whether the speech was an explicit or implied part of an employee's job description[,]" *Fledderjohann v. Celina City Sch. Bd. of Educ.*, 825 F. App'x 289, 294 (6th Cir. 2020) (citing *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 544 (6th Cir. 2007)) (clarifying that "*Garcetti* [] implicitly recognized that [] ad hoc or de facto duties can fall within the scope of an employee's official responsibilities [and thus constitute unprotected speech] despite not appearing in any written job description"). Courts also consider several other factors including "the impetus for the speech, the setting, the audience, and the subject matter of the speech." *Holbrook v. Dumas*, 658 F. App'x 280, 288 (6th Cir. 2016). It is a question of law whether a plaintiff engages in protected speech. *Farhat v. Jopke*, 370 F.3d 580, 590 (6th Cir. 2004).

***Plaintiff's speech was not on a matter of public concern.*** Plaintiff alleges his speech to a Michigan student-athlete was on a matter of public concern – the NCAA investigation. (ECF No. 1., Compl, ¶213.) But this Court must look further than

20

Plaintiff's conclusory allegations. *Fox*, 605 F.3d at 348.

"[I]t is not enough to say that a particular topic or subject is, at some level of abstraction, a matter of public concern." *Schilcher v. Univ. of Arkansas*, 387 F.3d 959, 963 (8th Cir. 2004). Instead, "the court must determine: the 'focus' of the speech; 'the point of the speech in question'; 'to what purpose the employee spoke'; 'the intent of the speech; or 'the communicative purpose of the speaker.'" *Farhat*, 370 F.3d at 592; *Dambrot*, 55 F.3d at 1187-88 (coach's use of a racist term during the halftime speech not protected because motivational speech to players was not a matter of public concern). In other words, the court must consider "the speech's impetus; its setting; its audience; and its general subject matter." *Mayhew v. Town of Smyrna, Tennessee*, 856 F.3d 456, 464 (6th Cir. 2017).

Here, Plaintiff's speech is not a matter of public concern because it does not relate to a matter of "political, social or other concern to the community." *Dambrot*, 55 F.3d at 1187. Rather, he spoke directly with a student-athlete about an investigation. (ECF No. 1, Compl, ¶102.) Although that investigation was being discussed in the media, Plaintiff does not allege that he publicly spoke out against the NCAA's investigation or any other topic of greater importance that could be considered a concern of the community. *Stanalajczo v. Perry*, 794 F. Supp. 3d 513, 526 (E.D. Mich. 2025) (mere fact that employee's job "in a general sense, concerns the public," does not mean his speech was on a matter of public concern). Instead,

21

Plaintiff's communication was to privately advise the student-athlete about how to handle the student-athlete's upcoming interview with the NCAA. (ECF No. 1, Compl, ¶103). Thus, Plaintiff's discussion of the investigation, in a one-on-one setting with a student-athlete, was not a matter of political, social, or community concern that could be considered a "public concern." *Gillis v. Miller,* 2016 WL 337454, at *8 (E.D. Mich. Jan. 28, 2016), *aff'd*, 845 F.3d 677 (6th Cir. 2017) (memorandum advising co-workers of right to union representation during investigation did not touch on a matter of public concern).

***Plaintiff was not speaking as a citizen.*** Plaintiff's speech is also not protected because he was speaking in his role as a public employee and not as a private citizen. Plaintiff, a football coach, was approached by a student-athlete. Plaintiff admits that his role as a coach includes mentoring student-athletes and responding to their concerns about the investigation. (ECF No. 1, Compl, ¶¶ 20, 35 (coaches "close relationships with student athletes … require[s] them to provide support to them and help them through challenging circumstances"), 37-38, 187 ("Partridge has consistently focused on the players that he is coaching and on his important role as a mentor to many young men…."); Ex 2, Grievance).

Plaintiff's assertion that he was speaking in his "individual capacity" because he was directed not to speak to student-athletes, is disingenuous. (ECF No. 1, Compl, ¶103). By his own admissions, Plaintiff's speech "owes its existence" to his

responsibilities as a coach vis-à-vis student-athletes. *Garcetti*, 547 U.S. at 421-22. And a directive not to speak to student-athletes does not transform Plaintiff's speech into private speech when Plaintiff violates that directive. To the contrary, a work-related instruction not to discuss a certain topic with a student-athlete ***confirms*** that the speech constitutes "ad hoc or de facto duties … within the scope of [Plaintiff's] official responsibilities." *Weisbrath*, 499 F.3d at 544. Here, there can be no doubt Plaintiff was speaking in his official capacity as a football coach for the University, speaking to a student-athlete. He admits he was the first person student-athletes turn to when issues arise. And he states that he and other football coaches worked together to calm the football players down about the investigation. In short, Plaintiff's Complaint confirms that the only reason the student-athlete approached Plaintiff and the only reason Plaintiff discussed the investigation with the student-athlete was because of his professional responsibility as a University football coach. Because the "impetus" for or "motivation" for his speech was his role as a football coach, and the audience was a student-athlete that he coached, any speech is not protected. *DeCrane v. Eckart*, 12 F.4th 586, 597 (6th Cir. 2021).

***The Pickering balancing test favors the University.*** Moreover, even if Plaintiff was able to plead that he spoke as private citizen (he cannot) addressing a matter of public concern (he cannot), his speech is not presumptively protected. Instead, as noted above, his First Amendment interests must outweigh "the interest

of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568. "In performing the balancing, the statement will not be considered in a vacuum; the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987).

Here, Plaintiff admits that there was an ongoing NCAA investigation and that he was instructed not to discuss that investigation with student-athletes. He also admits that he did not follow that instruction. Such interference could have far reaching consequences to the University for possibly obstructing the investigation, in addition to any penalty levied against the University related to the underlying investigation. Thus, the University has an interest in addressing potential interference with the investigation and averting future disruption to its football program because Plaintiff violated the directive. *Hedgepeth v. Britton*, 152 F.4th 789, 796 (7th Cir. 2025) (public school employer's interest in avoiding disruption to its services provided and potential disruption in the future outweigh employee's speech interest.) The University also has a strong interest in ensuring that its work-related directives are followed, particularly in the context of an ongoing investigation. *Farhat*, 370 F.3d at 598 (upholding restriction on employee speech during an investigation). Plaintiff's disregard for those directives impairs the ability of the University to ensure that its employees follow work rules and do not interfere

24

in the integrity of the NCAA investigation. *Rankin*, 483 U.S. at 388 ("whether the statement impairs discipline by superiors" is a relevant consideration in the balancing test); *Gillis v. Miller*, 845 F.3d 677, 687 (6th Cir. 2017) (public employer need not show "actual disruption" to prevail under the *Pickering* balancing test). Thus, the Pickering balancing test favors the University.

## V.     Conclusion.

For all the reasons set forth above, Defendants respectfully request that the Court dismiss the Complaint in its entirety and with prejudice.

Dated: May 11, 2026                    Respectfully submitted,

*/s/ Brian M. Schwartz*
Brian M. Schwartz (P69018)
Kyle Bierlein (P78278)
Miller, Canfield, Paddock and Stone, P.L.C.
150 W. Jefferson, Ste. 2500
Detroit, MI 48226
(313) 963-6420
schwartzb@millercanfield.com
bierlein@millercanfield.com
*Counsel for Defendants*

25

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

*/s/ Brian M. Schwartz*
Brian M. Schwartz (P69018)