# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CHRIS PARTRIDGE,

     Plaintiff,

v.

UNIVERSITY OF MICHIGAN;
UNIVERSITY OF MICHIGAN BOARD
OF REGENTS; SANTA ONO, in his official
and individual capacities; WARDE MANUEL,
in his official and individual capacities; and
TONY PETITTI,

     Defendants.

Case No. 4:26-cv-10821-SDK-CI
Hon. Shalina D. Kumar

---

| | |
|---|---|
| Elizabeth K. Abdnour (P78203)<br>Mitchell D. Sickon (P82407)<br>ABDNOUR WEIKER LLP<br>325 E. Grand River Ave., Ste. 250<br>East Lansing, MI 48823<br>(517) 994-1776<br>liz@education-rights.com<br>mitch@education-rights.com | Brian M. Schwartz (P69018)<br>D. Kyle Bierlein (P78278)<br>MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.<br>150 W. Jefferson, Ste. 2500<br>Detroit, MI 48226<br>(313) 963-6420<br>schwartzb@millercanfield.com<br>bierlein@millercanfield.com |
| Mark A. Weiker (P85381)<br>Jessica N. Moore (OH: 0101098)<br>ABDNOUR WEIKER LLP<br>262 S. Third St.<br>Columbus, OH 43215<br>(614) 745-2001<br>mark@awlawohio.com<br>jessica@awlawohio.com | *Attorneys for Defendants University of Michigan, University of Michigan Board of Regents, Santa Ono, and Warde Manuel ("University Defendants")* |
| *Attorneys for Plaintiff* | |

---

# UNIVERSITY DEFENDANTS' MOTION TO DISMISS
# PLAINTIFF'S AMENDED COMPLAINT WITH PREJUDICE

Defendants University of Michigan,[1] Regents of the University of Michigan, Santa Ono, and Warde Manuel ("University Defendants") move to dismiss the claims asserted against them in Plaintiff's Amended Complaint ("AC") in their entirety and with prejudice pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The Complaint should be dismissed for several alternative and independent reasons:

1. The University and Ono and Manuel, in their official capacities, are protected by sovereign immunity. And Ono and Manuel are entitled to qualified immunity for any personal capacity claims, particularly where the AC lacks non-conclusory factual allegations showing their personal involvement in the violation of a clearly established constitutional right.

2. Plaintiff fails to state a due process claim (Count I) because he does not adequately allege that the decision to terminate his employment implicated protected property or liberty interests where he does not have a right to continued employment. And, in any case, Plaintiff received sufficient process.

3. Plaintiff fails to state a claim for a failure to train and supervise (Count II) against Ono because Plaintiff does not sufficiently allege that Ono was personally

---

[1] Plaintiff improperly named the "University of Michigan" as a Defendant. The Board of Regents "constitute[s] the body corporate" with the legal capacity to "be[] sued" on behalf of the University under Michigan law. MCL 390.4; *see* Mich. Const. 1963, art 8, § 5. Any other entity is an improper defendant. *See, e.g.*, *Ali v. Univ of Michigan Health Sys-Risk Mgmt.*, No. 11-13913, 2012 WL 3312419, at *3 (E.D. Mich. May 4, 2012), *R&R adopted*, 2012 WL 3110716 (E.D. Mich. July 31, 2012).

responsible for any alleged constitutional deprivation. Nor does he adequately plead that the training provided was insufficient, deliberate indifference, or a causal nexus between the alleged inadequate training and his termination.

4.     Plaintiff fails to state a First Amendment retaliation claim (Count III) against Manuel. Plaintiff's speech was not on a matter of public concern. Nor was Plaintiff speaking as a private citizen when he spoke with a student-athlete. Instead, he was speaking in his capacity as a coach, in direct violation of a University directive not to communicate about a pending NCAA investigation. Finally, even if Plaintiff could plead that he was speaking as a citizen on a matter of public concern, the University's interest in ensuring that work-related directives are followed in the context of an ongoing investigation outweighs Plaintiff's speech interests.

5.     Plaintiff fails to state a claim for conspiracy to violate constitutional rights (Count IV) because he does not plead a conspiracy with specificity and instead relies solely on allegations pled "upon information and belief."

6.     Plaintiff's "Injunctive Relief" claim (Count V) should be dismissed because it is a form of relief and not an independent cause of action.

7.     The remaining claims (Counts VI-X) are not pled against the University Defendants, but are pled against Tony Pettiti, the Big Ten Commissioner.

8.     Pursuant to Local Rule 7.1(a), counsel for Defendants sent a detailed email to Plaintiff's counsel, describing the basis of this motion. After back-and-forth emails, regarding Plaintiff's claim for "Injunctive Relief," Plaintiff's counsel stated

3

that "I agree that there is no independent, standalone claim for injunctive relief." Plaintiff's counsel also agreed that monetary damage are not available against the University and Ono and Manuel in their official capacities. In all other respects, concurrence was denied.

WHEREFORE, the University Defendants ask the Court to grant this Motion and dismiss the claims pled against them in their entirety and with prejudice.

Dated: August 3, 2026

Respectfully submitted,

*/s/ Brian M. Schwartz*
Brian M. Schwartz (P69018)
Kyle Bierlein (P78278)
Miller, Canfield, Paddock and Stone, P.L.C.
150 W. Jefferson, Ste. 2500
Detroit, MI 48226
(313) 963-6420
schwartzb@millercanfield.com
bierlein@millercanfield.com

*Attorneys for University Defendants*

4

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CHRIS PARTRIDGE,

      Plaintiff,

v.

UNIVERSITY OF MICHIGAN;
UNIVERSITY OF MICHIGAN BOARD
OF REGENTS; SANTA ONO, in his official
and individual capacities; WARDE MANUEL,
in his official and individual capacities; and
TONY PETITTI,

      Defendants.

Case No. 4:26-cv-10821-SDK-CI
Hon. Shalina D. Kumar

---

Elizabeth K. Abdnour (P78203)
Mitchell D. Sickon (P82407)
ABDNOUR WEIKER LLP
325 E. Grand River Ave., Ste. 250
East Lansing, MI 48823
(517) 994-1776
liz@education-rights.com
mitch@education-rights.com

Mark A. Weiker (P85381)
Jessica N. Moore (OH: 0101098)
ABDNOUR WEIKER LLP
262 S. Third St.
Columbus, OH 43215
(614) 745-2001
mark@awlawohio.com
jessica@awlawohio.com

*Attorneys for Plaintiff*

Brian M. Schwartz (P69018)
D. Kyle Bierlein (P78278)
MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.
150 W. Jefferson, Ste. 2500
Detroit, MI 48226
(313) 963-6420
schwartzb@millercanfield.com
bierlein@millercanfield.com

*Attorneys for Defendants University of
Michigan, University of Michigan
Board of Regents, Santa Ono, and
Warde Manuel ("University
Defendants")*

---

**BRIEF IN SUPPORT OF UNIVERSITY DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S AMENDED COMPLAINT WITH PREJUDICE**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... iii

STATEMENT OF ISSUES PRESENTED ................................................................ix

CONTROLLING OR MOST APPROPRIATE AUTHORITY .............................. x

I.    Introduction ........................................................................................... 1

II.   Background ............................................................................................. 2

      A.    Plaintiff's Employment ................................................................ 3

      B.    Plaintiff's Termination ................................................................ 3

      C.    Plaintiff's Grievance .................................................................... 4

III.  Standard of Review ............................................................................... 6

IV.   Argument ................................................................................................ 7

      A.    Plaintiff's Claims Are Barred by Immunity ................................ 7

            1.    The Eleventh Amendment Bars Claims Against the
                  University and Official Capacity Defendants ..................... 7

            2.    Qualified Immunity Bars the § 1983 Claims ..................... 9

      B.    Plaintiff Does Not State a Procedural Due Process Claim
            (Count I) ...................................................................................... 11

            1.    Plaintiff Does Not Have a Protected Property Interest in
                  Continued Employment .................................................... 11

            2.    Plaintiff Received Constitutionally Adequate Process ............ 14

      C.    Plaintiff Fails to State a Claim for Failure to Train and
            Supervise Against Ono (Count II) ............................................... 15

            1.    Plaintiff Does Not Sufficiently Allege Ono Was
                  Personally Responsible for the Alleged Constitutional
                  Deprivation ....................................................................... 16

            2.    Plaintiff Does Not Sufficiently Allege a Constitutional
                  Duty to Train or that Any Training Provided Was
                  Inadequate ......................................................................... 17

            3.    Plaintiff Does Not Plead Deliberate Indifference ................. 17

            4.    Plaintiff's Alleged Injury Was Not Related to Ono's
                  Actions ............................................................................... 18

i

**TABLE OF CONTENTS**
(continued)

Page

D.      Plaintiff Fails to State a First Amendment Retaliation Claim against Manuel (Count III)................................................................18

E.      Plaintiff Fails to Adequately Plead a Civil Rights Conspiracy Claim (Count IV)...............................................................................24

F.      Injunctive Relief is a Remedy, Not a Claim (Count V).....................25

V.    Conclusion ..............................................................................................25

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*16630 Southfield Ltd. P'ship v. Flagstar Bank,*
  F.S.B., 727 F.3d 502 (6th Cir. 2013) ....................................................................10

*Ali v. Univ of Michigan Health Sys-Risk Mgmt.,*
  No. 11-13913, 2012 WL 3112419 (E.D. Mich. May 4, 2012), *R&R*
  *adopted*, 2012 WL 3110716 (E.D. Mich. July 31, 2012) ......................................2

*U.S. ex rel. Angelo v. Allstate Ins. Co.,*
  106 F.4th 441 (6th Cir. 2024) ...............................................................................6

*Ashcroft v. al-Kidd,*
  563 U.S. 731 (2011) ..............................................................................................9

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .........................................................................................6, 15

*Bailey v. City of Ann Arbor,*
  860 F.3d 382 (6th Cir. 2017) ................................................................................7

*Bambach v. Moegle,*
  92 F.4th 615 (6th Cir. 2024) .................................................................................9

*Bd. of Regents v. Roth,*
  408 U.S. 564 (1972) ............................................................................................11

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ..............................................................................................6

*Chilingirian v. Boris,*
  882 F.2d 200 (6th Cir. 1989) ..............................................................................12

*Cleveland Bd. of Educ. v. Loudermill,*
  470 U.S. 532 (1985) ............................................................................................14

*Com. Money Ctr., Inc. v. Ill. Union Ins. Co.,*
  508 F.3d 327 (6th Cir. 2007) ...........................................................................7, 14

*Connick v. Thompson*,
  563 U.S. 51 (2011)..................................................................x, 17, 18

*Ctr. for Bio-Ethical Reform v. Napolitano*,
  648 F.3d 365 (6th Cir. 2011) ...................................................6

*Cunningham v. Shelby Cty.*,
  994 F.3d 761 (6th Cir. 2021) ...................................................9

*Dambrot v. Cent. Mich. Univ.*,
  55 F.3d 1177 (6th Cir. 1995) .............................................x, 19, 21

*DeCrane v. Eckart*,
  12 F.4th 586 (6th Cir. 2021) .................................................23

*Dixon v. Univ. of Toledo*,
  702 F.3d 269 (6th Cir. 2012) .................................................19

*Does v. Whitmer*,
  69 F.4th 300 (6th Cir. 2023) ...................................................6

*Ehinger v. University of Michigan Board of Regents*,
  1997 WL 33343826 (Mich. Ct. App. Sept. 19, 1997) .......................13

*Farhat v. Jopke*,
  370 F.3d 580 (6th Cir. 2004) ...........................................20, 21, 24

*Fieger v. Cox*,
  524 F.3d 770 (6th Cir. 2008) .............................................xi, 25

*Fledderjohann v. Celina City Sch. Bd. of Educ.*,
  825 F. App'x 289 (6th Cir. 2020) ...........................................20

*Fox v. Traverse City Area Pub. Sch. Bd. of Educ.*,
  605 F.3d 345 (6th Cir. 2010) .................................................21

*Garcetti v. Ceballos*,
  547 U.S. 410 (2006).......................................................x, 19, 20, 22

*Gillis v. Miller*,
  2016 WL 337454 (E.D. Mich. Jan. 28, 2016), *aff'd*, 845 F.3d 677
  (6th Cir. 2017)...........................................................22, 24

iv

*Gregory v. City of Louisville*,
  444 F.3d 725 (6th Cir. 2006) ...............................................................16

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982)...............................................................................9

*Heath v. Highland Park Sch. Dist.*,
  800 F. Supp. 1470 (E.D. Mich. 1992) ...............................................15

*Hedgepeth v. Britton*,
  152 F.4th 789 (7th Cir. 2025) .............................................................24

*Helphenstine v. Lewis Cty.*,
  60 F.4th 305 (6th Cir. 2023) ...............................................................10

*Heyne v. Metro. Nashville Pub. Schs.*,
  655 F.3d 556 (6th Cir. 2011) ........................................................xi, 24

*Holbrook v. Dumas*,
  658 F. App'x 280 (6th Cir. 2016).........................................................20

*Houchens v. Beshear*,
  850 F. App'x 340 (6th Cir. 2021) ........................................................11

*Johnson v. Daniels*,
  769 F. Supp. 230 (E.D. Mich. 1991), *aff'd*, 70 F.3d 1272 (6th Cir.
  1995) .....................................................................................................10

*Johnson v. Moseley*,
  790 F.3d 649 (6th Cir. 2015) ..........................................................x, 10

*Kaplan v. Univ. of Louisville*,
  10 F.4th 569 (6th Cir. 2021) ...............................................................11

*Kerchen v. Univ. of Mich.*,
  100 F.4th 751 (6th Cir. 2024) .......................................................x, 7, 9

*Kollaritsch v. Mich. State Univ. Bd. of Trs.*,
  944 F.3d 613 (6th Cir. 2019) ............................................................x, 9

*Lane v. Franks*,
  573 U.S. 228 (2014)..................................................................x, 19, 20

*Liu v. Stone*,
   2001 WL 865075 (Mich. Ct. App. July 31, 2001)...........................................x, 13

*Lytle v. Malady*,
   579 N.W.2d 906 (Mich. 1998)..............................................................x, 12

*Mathews v. Eldridge*,
   424 U.S. 319 (1976)...........................................................................x, 14

*Mayhew v. Town of Smyrna, Tennessee*,
   856 F.3d 456 (6th Cir. 2017) ....................................................................21

*McCormick v. Miami Univ.*,
   693 F.3d 654 (6th Cir. 2012) ......................................................................8

*Meriwether v. Hartop*,
   992 F.3d 492 (6th Cir. 2021) ....................................................................19

*Mosier v. Evans*,
   90 F.4th 541 (6th Cir. 2024) .....................................................................16

*Nolan v. Detroit Edison Co.*,
   991 F.3d 697 (6th Cir. 2021) .................................................................3, 14

*Odom v. Univ. of Mich.*,
   2017 WL 2117978 (E.D. Mich. May 16, 2017) ...........................................x, 12

*Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*,
   455 F.3d 690 (6th Cir. 2006) ..............................................................x, 16, 18

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984)....................................................................................8

*Perry Ed. Ass'n v. Perry Loc. Educators' Ass'n*,
   460 U.S. 37 (1983)...................................................................................xi

*Phillips v. Roane County*,
   534 F.3d 531 (6th Cir. 2008) .............................................................x, 10, 16

*Pickering v. Bd. of Educ.*,
   391 U.S. 563 (1968)................................................................ xi, 19, 23, 24

*Ramsey v. Bd. of Educ. of Whitley Cnty., Ky.*,
844 F.2d 1268 (6th Cir. 1988) ........................................................................x, 15

*Rankin v. McPherson*,
483 U.S. 378 (1987)...................................................................................23, 24

*Rood v. Gen. Dynamics Corp.*,
444 Mich. 107 (1993) ........................................................................................12

*Russell v. Lundergan-Grimes*,
784 F.3d 1037 (6th Cir. 2015) ............................................................................6

*Schilcher v. Univ. of Arkansas*,
387 F.3d 959 (8th Cir. 2004) ............................................................................21

*Sharp v. Lindsey*,
285 F.3d 479 (6th Cir. 2002) ............................................................................15

*Stanalajczo v. Perry*,
794 F. Supp. 3d 513 (E.D. Mich. 2025) ...........................................................21

*Toteff v. Vill. of Oxford*,
562 F. Supp. 989 (E.D. Mich. 1983) .................................................................25

*Turaani v. Sessions*,
316 F. Supp. 3d 998 (E.D. Mich. 2018) .......................................................xi, 25

*Weisbarth v. Geauga Park Dist.*,
499 F.3d 538 (6th Cir. 2007) ......................................................................20, 22

*Will v. Mich. Dep't of State Police*,
491 U.S. 58 (1989)........................................................................................x, 8

**Statutes**

42 U.S.C. § 1983 ...................................................................................*passim*

MCL 390.4 ...........................................................................................................2

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)........................................................................................6

Fed. R. Civ. P. 12(b)(6)........................................................................................6

Fed. R. Civ. P. 12(f) ............................................................................ 17

Mich. Const. 1963, Article 8, § 5 .......................................................... 2

U.S. Const., Amend. I ..................................................................*passim*

U.S. Const., Amend. XI ..................................................................... 6, 7

U.S. Const. Amendment XIV .............................................................. 11

## Statement of Issues Presented

I.     Are Plaintiff's claims against the University and Santa Ono and Warde Manuel, in their official capacities, barred by sovereign immunity?

II.    Are Santa Ono and Warde Manuel entitled to qualified immunity to the extent that they are sued in their individual (personal) capacities?

III.   Should the Court dismiss Plaintiff's procedural due process claim (Count I) because Plaintiff does not plausibly plead a protected interest in continued employment and, in any event, he received more than adequate due process?

IV.    Should the Court dismiss Plaintiff's failure to train and supervise claim against Ono (Count II) because Plaintiff does not sufficiently allege that Ono was personally responsible for any alleged constitutional deprivation, nor does he adequately plead that the training provided was insufficient, deliberate indifference, or a causal nexus between the alleged inadequate training and his termination?

V.     Should the Court dismiss Plaintiff's First Amendment retaliation claim against Manuel (Count III) because the alleged speech was not on a matter of public concern, Plaintiff was speaking in his role as a public employee and not a private citizen, and because the University's interest in ensuring that work-related directives are followed in the context of an ongoing investigation outweighs Plaintiff's speech interests?

VI.    Should the Court dismiss Plaintiff's claim for conspiracy to violate constitutional rights against Manuel (Count IV) because Plaintiff does not plead a conspiracy with specificity and instead relies solely on allegations pled "upon information and belief"?

VII.   Should the Court dismiss Plaintiff's claim for "Injunctive Relief" (Count V) because it is not an independent claim?

ix

**Controlling or Most Appropriate Authority**

*Sovereign and qualified immunity:*

*Johnson v. Moseley*, 790 F.3d 649 (6th Cir. 2015)

*Kerchen v. Univ. of Mich.*, 100 F.4th 751 (6th Cir. 2024)

*Kollaritsch v. Mich. State Univ. Bd. of Trs.*, 944 F.3d 613 (6th Cir. 2019)

*Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)

*Due Process claim (Count I):*

*Liu v. Stone*, 2001 WL 865075 (Mich. Ct. App. July 31, 2001)

*Lytle v. Malady*, 579 N.W.2d 906 (Mich. 1998)

*Mathews v. Eldridge*, 424 U.S. 319 (1976)

*Odom v. Univ. of Mich.*, 2017 WL 2117978 (E.D. Mich. May 16, 2017)

*Ramsey v. Bd. of Educ. of Whitley Cnty., Ky.*, 844 F.2d 1268 (6th Cir. 1988)

*Failure to train and supervise (Count II):*

*Connick v. Thompson*, 563 U.S. 51 (2011)

*Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690 (6th Cir. 2006)

*Phillips v. Roane County*, 534 F.3d 531 (6th Cir. 2008)

*First Amendment claim (Count III):*

*Dambrot v. Cent. Mich. Univ.*, 55 F.3d 1177 (6th Cir. 1995)

*Garcetti v. Ceballos*, 547 U.S. 410 (2006).

*Lane v. Franks*, 573 U.S. 228 (2014).

x

*Pickering v. Bd. of Educ., 391 U.S. 563 (1968)*

*Perry Ed. Ass'n v. Perry Loc. Educators' Ass'n, 460 U.S. 37 (1983)*

**Civil rights conspiracy claim (Count IV):**

*Fieger v. Cox*, 524 F.3d 770 (6th Cir. 2008)

*Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556 (6th Cir. 2011)

**Injunctive relief claim (Count V):**

*Turaani v. Sessions*, 316 F. Supp. 3d 998 (E.D. Mich. 2018)

## I.      Introduction.

The University of Michigan's ("University") football program is one of the most recognizable brands in sports. Athletic Department employees must comply with National Collegiate Athletic Association ("NCAA"), Big Ten Conference, and University rules and regulations. When they fail to do so, significant repercussions and penalties can be levied. While the University supports a tradition of free speech and encourages its coaches to support its student-athletes, they must still comply with all rules, regulations, and internal directives.

Plaintiff was a coach. Shortly after the NCAA opened an investigation, University legal counsel and Athletic Department management met with football staff and instructed them not to discuss the ongoing investigation with student-athletes. Ignoring this directive, Plaintiff admits to discussing the investigation with a student-athlete. As a result, Plaintiff was terminated. Although Plaintiff was an at-will employee, he grieved his termination, which was ultimately denied.

The Amended Complaint ("AC") suffers from several flaws. First, the University and Santa Ono and Warde Manuel, in their official capacities, are entitled to sovereign immunity. Ono and Manuel are also entitled to qualified immunity in their individual capacities.

Next, Plaintiff does not plead a cognizable due process violation (Count I) because he was employed at-will and at the pleasure of the Athletic Director.

1

Regardless, Plaintiff received adequate process through the grievance hearing.

Plaintiff's failure to train and supervise claim (Count II) is flawed because he does not adequately plead that Ono was personally involved in any constitutional deprivation, deliberate indifference, or a causal nexus between any alleged failure to train (which apparently, under Plaintiff's theory, led to the NCAA investigation) and his termination (which resulted from Plaintiff violating a directive not to speak with student-athletes on a specific topic).

Plaintiff's First Amendment retaliation claim (Count III) fails because he spoke as a public employee on a matter that was not of public concern. As a result, his speech was not protected. In any event, the University's interest in ensuring that work-related directives are followed during an ongoing investigation outweighs Plaintiff's speech interests.

Plaintiff's civil rights conspiracy claim (Count IV) fails because he does not plead allegations with the required specificity and instead relies solely "upon information and belief."

Finally, Plaintiff's injunctive relief claim (Count V) should be dismissed because it is a form of relief, not an independent cause of action.

## II.    Background.

This Motion is based on the AC's allegations and documents to which those allegations cite, which are properly considered because they are central to the claims.

2

*Nolan v. Detroit Edison Co.*, 991 F.3d 697, 707 (6th Cir. 2021). Where exhibits "contradict[] allegations in the complaint, rendering them implausible, 'the exhibit trumps the allegations.'" *Id.*

### A.     Plaintiff's Employment.

Plaintiff was most recently hired as a Defensive Analyst effective February 3, 2023. (ECF No. 13, AC, ¶¶ 80-87; Ex 1, MOU.)[2] A Memorandum of Understanding ("MOU") outlined the terms of his employment, stating that his "employment is at-will and may be terminated with or without cause." (Ex 1). Although employed at-will, the MOU provided that if he was terminated without cause, his salary would be paid through January 31, 2024. (*Id.*) Additionally, Plaintiff's employment was "subject to [his] satisfactory performance of [his] duties as determined by the Head Football Coach and Athletic Director." (*Id.*) He was also required to comply with the NCAA, Big Ten Conference, and University rules, regulations, policies, interpretations, and by-laws. (*Id.*)

### B.     Plaintiff's Termination.

During the 2023 Football season, the NCAA began to investigate a rogue former football staff employee, Connor Stalions, who allegedly orchestrated a scouting scheme. (ECF No. 13, Compl, ¶¶111, 116-17.)

On November 13, 2023, University Senior Associate General Counsel and

---

[2] The AC refers to and extensively quotes the MOU. (ECF No. 13, ¶¶ 80-87).

Chief Counsel for Athletics Debra Kowich and Athletic Department Executive Assistant Doug Gnodtke held a meeting with all football employees, including Plaintiff. (*Id.*, ¶132.) Kowich directed employees not to communicate with football players about the pending investigation. (*Id.*, ¶133.)

Shortly thereafter, a football player asked his coach (Plaintiff) for advice regarding his upcoming interview. (*Id.*, ¶140-41.) Violating the directive, Plaintiff spoke with the player about the investigation. (*Id.*)

On or around November 17, 2023, Plaintiff met with Manuel and Gnodtke. (*Id.*, ¶¶164-174.) Manuel told Plaintiff that he was being terminated because he failed to comply with the directive. (*Id.*, ¶168.) That same day, a letter was sent memorializing the meeting. (*Id.*, ¶175.)

## C.      Plaintiff's Grievance.

Plaintiff filed a grievance, asserting he was terminated "without cause in violation of my contract." (Ex 2, Grievance; ECF 13, ¶186.) He acknowledges, however, that Manuel stated "that he was firing me effective immediately because I disobeyed a directive to not communicate with a player about the current NCAA investigation." (Ex 2.) Plaintiff explained why he disobeyed the directive:

> I was approached by student athletes who were extremely nervous and shook up by the interviews that were taking place. **My role as a mentor to them is to calm them down**. My Colleagues and I worked together to help calm the athletes in the investigation because the manner that the investigation was being allowed to operate was intimidating to the athletes. **The same athletes that we are tasked to protect and guide**

4

**in all aspects of their lives**. **When something happens at the University the athletes come to us first**, the parents of these athletes call us first. To ask us not to acknowledge them or to turn them away goes against everything we are taught as coaches. (*Id*. (emphasis added).)

A hearing was held, where Plaintiff provided evidence and shared his side of the story. (*See* ECF No. 13, ¶¶ 23, 187; Ex 3, 3/8/24 Letter.)

The University Review Committee concluded that Plaintiff was not entitled to a Disciplinary Review Conference ("DRC") because SPG 201.12 excludes "those whose employment agreement states that they serve at the pleasure of a particular University official." (Ex 3, 3/8/24 Letter (quoting SPG 201.12)).[3] It found that the MOU placed Plaintiff outside the scope of the SPG. (*Id.*) It also explained that Plaintiff had an opportunity to respond and defend himself, explaining:

> Although you were not entitled to a DRC, the grievance hearing did afford you the opportunity to share your perspective on the matter. Your conversation with the student athlete including your admission that you advised a student-athlete to contact an attorney prior to meeting with an NCAA investigator did violate the directive shared at the November 13, 2023 meeting to not communicate with student-athletes about the investigation or interviews. The committee also learned that guidance was provided at the November 13, 2023 meeting on how to respond to student-athlete queries, specifically to advise that you were unable to discuss the situation and refer them back to Doug Gnodtke, Elizabeth Heinrich, or Debbie Kowich. Moreover, the fact that the directive was not placed in writing did not excuse you from following the oral directive. The committee agrees that you failed to satisfactorily perform your duties and were appropriately relieved of your duties at the behest of the Athletic Director. (*Id.*)

---

[3] SPG 201.12 is available at https://spg.umich.edu/policy/201.12 and at Ex. 4.

### III. Standard of Review.

A complaint may be dismissed for "lack of subject-matter jurisdiction" under Fed. R. Civ. P. 12(b)(1). Eleventh Amendment sovereign immunity is a jurisdictional defense under Rule 12(b)(1). *Does v. Whitmer*, 69 F.4th 300, 305 (6th Cir. 2023); *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully"; rather, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court "accept[s] well-pleaded factual allegations (as well as reasonable inferences from those allegations) in the complaint as true," but "need not credit a legal conclusion couched as a factual allegation or a naked assertion devoid of further factual enhancement." *U.S. ex rel. Angelo v. Allstate Ins. Co.*, 106 F.4th 441, 448 (6th Cir. 2024) (quotations omitted). A complaint that does not provide the "when, where, in what, or by whom" to support conclusory allegations fails to state a claim. *Ctr. for Bio-Ethical Reform v. Napolitano*, 648 F.3d 365, 373 (6th Cir. 2011).

"[W]hen a document is referred to in the pleadings and is integral to the

claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.,* 508 F.3d 327, 335–36 (6th Cir. 2007). "[A] court ruling on a motion to dismiss may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *Bailey v. City of Ann Arbor,* 860 F.3d 382, 386 (6th Cir. 2017) (emphasis omitted) (quotation omitted).

## IV.     Argument.

### A.     Plaintiff's Claims Are Barred by Immunity.

#### 1.     The Eleventh Amendment Bars Claims Against the University and Official Capacity Defendants.

The Eleventh Amendment "forbids a plaintiff from suing a state, a state agent, or a state instrumentality for monetary damages in federal court unless that state has consented to suit, or unless Congress has clearly and expressly abrogated the state's immunity to suit." *Kerchen v. Univ. of Mich.*, 100 F.4th 751, 761 (6th Cir. 2024). Moreover, "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent," such that Plaintiff's claims against Ono and Manuel in their official capacities are subject to dismissal for the same reasons. *See id.* (claims against University employee "in his official capacity are construed as asserted against Michigan itself").

The University is cloaked in sovereign immunity. *Id.* Since the University has not waived immunity, the Eleventh Amendment precludes recovery, because

7

Plaintiffs cannot "directly su[e] a State in federal court." *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012).

Additionally, § 1983 allows for liability only against a "person." 42 U.S.C. § 1983. But "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Here, Plaintiff asserts § 1983 due process claims against Ono and Manuel in their official capacities, seeking various categories of damages. (ECF No. 13, ¶¶ 324-325 and "Relief Requested".) But such damages are barred.

Plaintiff's identification of potential equitable relief falls short too. Although he seeks an order enjoining "further disparagement or retaliation," (*id.*, ¶ 295), he does not include any plausible facts that support ongoing retaliation and he does not assert a disparagement claim against the University Defendants. And while he seeks restoration to his position as a linebacker coach (despite being employed by the Seattle Seahawk's), his contract was, at best, time-limited and set to expire January 31, 2024, (Ex 1), and the Court cannot grant injunctive relief ordering compliance with state law, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106-07 (1984). Finally, his request for a declaration that his termination violated the Constitution does not provide *prospective* relief but is instead a statement about the past. Simply put, Plaintiff does not allege any ongoing violations to declare unconstitutional. His § 1983 claims are barred by sovereign immunity.

### 2. Qualified Immunity Bars the § 1983 Claims.

"Qualified immunity shields government officials from standing trial for civil liability in their performance of discretionary functions, unless their actions violate clearly established rights." *Kollaritsch v. Mich. State Univ. Bd. of Trs.*, 944 F.3d 613, 626 (6th Cir. 2019). "The immunity serves dual values: ensuring that wronged individuals can vindicate their constitutional rights while simultaneously reducing the social costs that result from subjecting public officials to increased litigation, like the distractions officials may face in contending with numerous lawsuits and the deterrent effect such litigation might have on otherwise capable people who choose not to enter public office." *Bambach v. Moegle*, 92 F.4th 615, 622 (6th Cir. 2024). A decision on qualified immunity at the earliest stage of litigation is vital to vindicate its protection against unnecessary litigation. *Kerchen*, 100 F.4th at 761.

Plaintiff has the burden of avoiding qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This requires plausibly alleging facts showing "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow*, 457 U.S. at 818). The court has discretion "to decide which prong of the qualified immunity equation to tackle first." *Cunningham v. Shelby Cty.*, 994 F.3d 761, 764 (6th Cir. 2021).

***Ono.*** Plaintiff fails to plead a constitutional violation by Ono. Nearly all the

9

allegations are made "upon information and belief" and must be disregarded. (ECF No. 13, ¶¶ 71-75, 77, 190, 265 (referring to the meeting discussed in ¶¶ 71-75)); *16630 Southfield Ltd. P'ship v. Flagstar Bank*, F.S.B., 727 F.3d 502, 506 (6th Cir. 2013) ("upon information and belief" allegations should be ignored when evaluating a complaint's sufficiency.) The remaining allegations are conclusory statements that Ono violated the law, which must also be ignored. (ECF No. 13, ¶¶ 266-72.)

Additionally, Plaintiff cannot sue Ono based solely on his title. "Personal participation is a *sine qua non* of individual capacity §1983 suits; *respondeat superior* is not within the purview of §1983 liability." *Johnson v. Daniels*, 769 F. Supp. 230, 234 (E.D. Mich. 1991), *aff'd*, 70 F.3d 1272 (6th Cir. 1995). Rather, Plaintiff must show that Ono "encouraged the specific incident of misconduct or in some other way directly participated in it." *Phillips v. Roane County*, 534 F.3d 531, 543 (6th Cir. 2008). Courts dismiss claims where there was no evidence of active, personal involvement. *See Johnson*, 790 F.3d at 653; *Helphenstine v. Lewis Cty.*, 60 F.4th 305, 321 (6th Cir. 2023) (supervisory liability claim failed where "claim rests entirely on [defendants'] purported failure to act"). Here, Plaintiff has no allegations that Ono engaged in an act that had a plausible relationship to his termination.

***Manuel.*** Plaintiff's allegations against Manuel fare no better. There are no allegations showing how Manuel violated a clearly established constitutional right. Instead, most are inadequate because they are made "upon information and belief."

10

(ECF No. 13, ¶¶ 71, 73, 75, 77, 108-10, 156-61, 169, 189-91, 203-04, 206(d), (f), 210.) Others merely describe meetings attended, or Manuel's interactions involving other employees, not Plaintiff, or the NCAA investigation. And none of the allegations describing Manuel terminating Plaintiff's employment involve a violation of a clearly established constitutional right.

### B.  Plaintiff Does Not State a Procedural Due Process Claim (Count I).

A procedural due process claim requires Plaintiff first to plead a constitutionally protected property interest.[4] *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 577 (6th Cir. 2021). He must then adequately plead that he was deprived of the procedures necessary to protect it. Plaintiff's claims fail at both steps.

### 1.  Plaintiff Does Not Have a Protected Property Interest in Continued Employment.

Not every public employee has a protected property interest in employment. Instead, "courts identify property interests by reference to independent sources of entitlement such as state law or a contract between the parties." *Id.* "But neither a 'unilateral expectation' to enjoy the alleged property interest nor an 'abstract need or desire for it' is enough." *Id.* at 578 (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). "A public employee does not have a property interest in continued

---

[4] Plaintiff has no substantive due process claim. "[T]he right to maintain public employment [is not] … a substantive due process right specifically protected under the Fourteenth Amendment." *Houchens v. Beshear*, 850 F. App'x 340, 343–44 (6th Cir. 2021).

employment when his position is held at the will and pleasure of his superiors and when he has not been promised that he will only be terminated for good cause." *Odom v. Univ. of Mich.*, 2017 WL 2117978, at \*5 (E.D. Mich. May 16, 2017) (quoting *Chilingirian v. Boris*, 882 F.2d 200, 203 (6th Cir. 1989)).

Here, the MOU states that "[y]our employment is at will and may be terminated with or without cause." (ECF No. 13, ¶87; Ex 1). It confirms that Plaintiff served at the pleasure of his superiors because his employment was subject to "[his] satisfactory performance of [his] duties as determined by the Head Football Coach and Athletic Director."[5] (Ex 1).

The MOU does not require that *both* the Head Football Coach and the Athletic Director determine that Plaintiff's employment was not satisfactory. In other words, the MOU does not provide either the Head Football Coach or the Athletic Director with veto power over a termination decision. Instead, because there is no language establishing that Plaintiff could only be terminated for cause, his employment remained "at will." *Lytle v. Malady*, 579 N.W.2d 906, 911 (Mich. 1998) ("A lack of specificity of policy terms or provisions, or a policy to act in a particular manner as long as the employer so chooses, is grounds to defeat any claim

---

[5] Even if Plaintiff argues that the MOU is not enforceable because it was not signed by anyone at UM, (ECF No. 13, ¶83), he still fails to identify a right to continued employment. *See Rood v. Gen. Dynamics Corp.*, 444 Mich. 107, 116 (1993) ("[e]mployment contracts for an indefinite duration are presumptively terminable at the will of either party for any reason or for no reason at all").

that a recognizable promise in fact has been made.")

Plaintiff's belief that the MOU is "contradictory" because it contains clear at-will language and adds that he will be paid the remainder of his salary if he is terminated without cause is misplaced. (ECF No. 13, PageID.145, n2). The MOU does not promise that Plaintiff will only be terminated for cause. Instead, it provides for the payment of salary for the remainder of the term "[i]n the event of a without cause termination." (Ex 1.) In other words, the MOU expressly contemplates that Plaintiff may be terminated "without cause" and "at will," while providing limited salary continuation if his termination is without cause. (*Id.*)

The additional allegations Plaintiff added in his AC do not save his claim. For example, while Plaintiff believes that SPG 201.08 applies, nothing in that policy provides for just cause employment. Indeed, in *Liu v. Stone*, 2001 WL 865075 (Mich. Ct. App. July 31, 2001), the court reasoned that "in the absence of specific oral statements or written contractual terms, the standard practice guide alone cannot be reasonably interpreted to create a promise of just-cause employment for the university's employees." *Id*. at *3. Similarly, in *Ehinger v. University of Michigan Board of Regents*, 1997 WL 33343826 (Mich. Ct. App. Sept. 19, 1997), the court held that the "Standard Practices Guide does not establish a promise of termination for just cause." *Id*. at *3.

Plaintiff's argument that a "linebackers coach" is an "ongoing staffing need"

13

is off-the-mark. Even if true, Plaintiff does not plausibly plead that *he* was entitled to continued employment rather than the position merely needing to be filled by a qualified candidate. To accept Plaintiff's argument would mean any position that is an "ongoing staffing need" provides the individual in that position with right to permanent employment. There is no support for Plaintiff's extreme position.

Plaintiff cannot establish that his employment was anything other than at-will and his procedural due process claim must be dismissed.

### 2. Plaintiff Received Constitutionally Adequate Process.

Regardless, Plaintiff received more than adequate process. An employee's right to due process must be balanced with the employer's interest in removing employees who violate its policies. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). Thus, a hearing does not have to comply with rigid or elaborate procedures, so long as it provides notice and a chance to be heard. *Id*.; *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Here, Plaintiff filed a grievance challenging his termination. (ECF No. 13, ¶186.) As he admits, the Grievance Review Committee held a hearing, allowed him to submit materials that the Committee reviewed, and issued its decision denying his appeal. (Ex 2, Grievance; Ex 3, 3/8/24 Grievance Determination).[6]

---

[6] The grievance and the grievance determination are properly considered because they are cited in the AC and central to Plaintiff's claims. (ECF No. 13, ¶¶186-87); *Nolan*, 991 F.3d at 707; *Com. Money Ctr., Inc.*, 508 F.3d at 335-36.

14

Plaintiff's assertion that he did not receive a pretermination hearing is misplaced. "[D]ue process does not always require a predeprivation hearing or support a [§]1983 action when any interest in employment is affected." *Ramsey v. Bd. of Educ. of Whitley Cnty., Ky*., 844 F.2d 1268, 1273 (6th Cir. 1988). This is because "[w]hen a person is hired for a fixed period of time or pursuant to a contract providing for employment 'at will' … and that person is dismissed prematurely, no federal cause of action lies under section 1983 to redress what is best characterized as an ordinary breach of contract." *Id.* Because Plaintiff could have brought a breach of contract action, he is not entitled to a pretermination hearing. *Sharp v. Lindsey*, 285 F.3d 479, 489 (6th Cir. 2002) (employee with fixed-term contract not entitled to pretermination hearing); *Heath v. Highland Park Sch. Dist*., 800 F. Supp. 1470, 1474 (E.D. Mich. 1992) (same).

Finally, Plaintiff's belief that the Committee "got it wrong," (ECF No. 13, ¶ 25), does not plead a due process violation. Due process does not entitle Plaintiff to a certain result. It only entitles him to notice and an opportunity to be heard.

### C.   Plaintiff Fails to State a Claim for Failure to Train and Supervise Against Ono (Count II).

Plaintiff has failed to adequately plead sufficient facts to support a § 1983 claim for failure to train and supervise. A supervisory official is not liable for the acts of his or her subordinates under a theory of *respondeat superior* or vicarious liability. *Iqbal*, 556 U.S. at 677. For Ono to be liable, he must be personally

15

responsible for the deprivation of a constitutional right. *Phillips*, 534 F.3d at 543 ("A supervisor is not liable pursuant to § 1983 for failing to train unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending [employee]."). A "mere failure to act" is insufficient. *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006).

Additionally, a failure to train claim requires Plaintiff to plead the following: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of [Ono's] deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). A failure to train claim requires a plaintiff to show a complete disregard of a "duty to train." *Mosier v. Evans*, 90 F.4th 541, 549 (6th Cir. 2024).

### 1. Plaintiff Does Not Sufficiently Allege Ono Was Personally Responsible for the Alleged Constitutional Deprivation.

Plaintiff fails to adequately allege that Ono was personally responsible for the deprivation of a constitutional right. For example, he states that Ono engaged in actions that should have led him to know that Manuel would engage in his own allegedly unconstitutional actions. (ECF No. 13, ¶268.) But all of Ono's alleged actions are made "upon information and belief" and none are based on a violation

16

of Plaintiff's constitutional rights. Additionally, Plaintiff's allegations rely on a causation chain that require at least five logical leaps: (1) that Ono engaged in some behavior in an unrelated investigation into Matt Weiss (with all allegations pled upon information and belief),[7] and (2) Ono then failed to train Manuel, (3) who did not train Harbaugh, (4) which led to the NCAA investigation, (5) which led to Plaintiff's termination when he disregarded a directive.

### 2. Plaintiff Does Not Sufficiently Allege a Constitutional Duty to Train or that Any Training Provided Was Inadequate.

Plaintiff does not explain what Ono allegedly failed to train Manuel on. Instead, he speculates that Ono may have had some duty. Even if Plaintiff believes that Manuel should have been trained on NCAA compliance, he fails to point to any constitutional requirement to train in accordance with a private organization's rules. Nor does he assert any facts regarding the training Manuel received, why it was inadequate, or how it could have prevented the harm he experienced.

### 3. Plaintiff Does Not Plead Deliberate Indifference.

To plead deliberate indifference, Plaintiff must allege a pattern of similar constitutional violations by untrained employees. *Connick v. Thompson*, 563 U.S. 51, 62 (2011). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training

---

[7] Those allegations in ECF No. 13, ¶¶ 56-78, which have nothing to do with Plaintiff, should be stricken under Fed. R. Civ. P. 12(f).

17

program that will cause violations of constitutional rights." *Id.* Here, Plaintiff includes no plausible allegations of deliberate indifference. He does not identify any conduct by employees similar to that which he believes Manuel (or others) engaged in, such that Ono would have been on notice that there was a need to train. To the contrary, the AC describes a unique investigation into "sign-stealing" that is not alleged to have ever occurred at the University or elsewhere. Thus, Plaintiff fails to offer sufficient facts to plead that Ono acted with deliberate indifference.

### 4.      Plaintiff's Alleged Injury Was Not Related to Ono's Actions.

Finally, Plaintiff did not plead facts that any alleged inadequate training caused his injury. *Ellis ex rel. Pendergrass*, 455 F.3d at 700. Plaintiff's "injury" does not stem from any inadequate training of Manuel that may have led to an NCAA investigation. The AC confirms he was terminated because of his failure to comply with directives not to discuss the investigation with student-athletes.

There is no "affirmative[]" link between "Ono's actions or inactions" and a "deprivation of Plaintiff's Constitutional rights," as Plaintiff asserts. (ECF No. 13, ¶270). Instead, as noted above, it requires several implausible logical leaps.

### D.      Plaintiff Fails to State a First Amendment Retaliation Claim against Manuel (Count III).

To state a retaliation claim, Plaintiff must plausibly allege that "(1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to

18

engage in that conduct; [and] (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by his protected conduct." *Dixon v. Univ. of Toledo*, 702 F.3d 269, 274 (6th Cir. 2012) (internal quotation marks omitted). Plaintiff does not plead the first or third elements.

Courts employ a two-part test to determine whether speech is protected. *Dambrot v. Cent. Mich. Univ.*, 55 F.3d 1177, 1186 (6th Cir. 1995). First, the court determines whether the speech was on a matter of public concern. *Id*. If so, step two analyzes whether the employee's speech interest outweighs the interest of the employer in "promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).

Importantly, "free-speech rules apply differently when the government is doing the speaking. And that remains true even when a government employee is doing the talking." *Meriwether v. Hartop*, 992 F.3d 492, 503–04 (6th Cir. 2021). "When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). This is so because of the "the government's countervailing interest in controlling the operation of its workplaces." *Lane v. Franks*, 573 U.S. 228, 236 (2014). "Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Garcetti*, 547 U.S. at 418.

19

As a result, "[w]hereas speech *as a citizen may* trigger protection, ... 'when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.'" *Lane*, 573 U.S. at 237 (quoting *Garcetti*, 547 U.S. at 421) (emphasis added). In assessing whether an employee was engaging in unprotected speech, *Garcetti* teaches that the ultimate question is whether the speech at issue "owes its existence to a public employee's professional responsibilities[.]" *Garcetti*, 547 U.S. at 421-22. The inquiry is a "practical one[,]" *id.* at 424-25, meaning that courts consider "whether the speech was an explicit or implied part of an employee's job description[,]" *Fledderjohann v. Celina City Sch. Bd. of Educ.*, 825 F. App'x 289, 294 (6th Cir. 2020) (citing *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 544 (6th Cir. 2007) (clarifying that "*Garcetti* [] implicitly recognized that [] ad hoc or de facto duties can fall within the scope of an employee's official responsibilities [and thus constitute unprotected speech] despite not appearing in any written job description")). Courts also consider several other factors including "the impetus for the speech, the setting, the audience, and the subject matter of the speech." *Holbrook v. Dumas*, 658 F. App'x 280, 288 (6th Cir. 2016). It is a question of law whether a plaintiff engages in protected speech. *Farhat v. Jopke*, 370 F.3d 580, 590 (6th Cir. 2004).

    ***Plaintiff did not speak on a matter of public concern.*** Plaintiff alleges his

20

speech to a student-athlete was on a matter of public "interest" – the NCAA investigation. (ECF No. 13, Compl, ¶ 274.) But this Court must look further than Plaintiff's conclusory allegations. *Fox*, 605 F.3d at 348.

"[I]t is not enough to say that a particular topic or subject is, at some level of abstraction, a matter of public concern." *Schilcher v. Univ. of Arkansas*, 387 F.3d 959, 963 (8th Cir. 2004). Instead, "the court must determine: the 'focus' of the speech; 'the point of the speech in question'; 'to what purpose the employee spoke'; 'the intent of the speech; or 'the communicative purpose of the speaker.'" *Farhat*, 370 F.3d at 592; *Dambrot*, 55 F.3d at 1187-88 (coach's use of a racist term during the halftime speech not protected because motivational speech was not a matter of public concern). In other words, the court must consider "the speech's impetus; its setting; its audience; and its general subject matter." *Mayhew v. Town of Smyrna, Tennessee*, 856 F.3d 456, 464 (6th Cir. 2017).

Here, Plaintiff's speech was not a matter of public concern because it did not relate to a matter of "political, social or other concern to the community." *Dambrot*, 55 F.3d at 1187. Rather, he spoke with a student-athlete about an investigation. (ECF No. 13, Compl, ¶ 140.) Although that investigation was discussed in the media, Plaintiff does not allege that he publicly spoke out against it. *Stanalajczo v. Perry*, 794 F. Supp. 3d 513, 526 (E.D. Mich. 2025) (that employee's job "in a general sense, concerns the public," does not mean his speech was on a matter of public concern).

21

Instead, Plaintiff privately advised a student-athlete. (ECF No. 13, Compl, ¶ 141). *Gillis v. Miller,* 2016 WL 337454, at *8 (E.D. Mich. Jan. 28, 2016), *aff'd*, 845 F.3d 677 (6th Cir. 2017) (memorandum advising co-workers of right to union representation during investigation did not touch on a matter of public concern).

***Plaintiff was not speaking as a citizen.*** Plaintiff's speech was also not protected because he was speaking in his role as a public employee and not as a private citizen. Plaintiff, a football coach, was approached by a student-athlete. He admits that his role as a coach includes mentoring student-athletes and responding to their concerns. (ECF No. 13, Compl, ¶¶ 38, 40 (coaches' "close relationships with student athletes … require[s] them to provide support to them and help them through challenging circumstances"), 41, 93, 245); Ex 2, Grievance).

Plaintiff's statement that he was speaking in his "individual capacity" because he was directed not to speak to student-athletes is disingenuous. (ECF No. 13, ¶ 141). By his own admissions, Plaintiff's speech "owes its existence" to his responsibilities as a coach. *Garcetti*, 547 U.S. at 421-22. A directive not to speak to student-athletes does not transform Plaintiff's speech when Plaintiff violates that directive. To the contrary, a work-related instruction not to discuss a certain topic with a student-athlete ***confirms*** that the speech constitutes "ad hoc or de facto duties … within the scope of [Plaintiff's] official responsibilities." *Weisbarth*, 499 F.3d at 544. Here, there is no doubt Plaintiff was acting in his official capacity as a University football

22

coach, speaking to a student-athlete. He admits he was the first person student-athletes turn to when issues arise. And he states that he and other football coaches worked together to calm the football players down. In short, the AC confirms that the only reason the student-athlete approached Plaintiff and the only reason Plaintiff talked with the student-athlete was because of his professional coach responsibilities. Because the "impetus" or "motivation" for his speech was his coaching role, and the audience was a student-athlete that he coached, the speech was not protected. *DeCrane v. Eckart*, 12 F.4th 586, 597 (6th Cir. 2021).

***The Pickering balancing test favors the University.*** Moreover, even if Plaintiff was able to plead that he spoke as a private citizen (he cannot) addressing a matter of public concern (he cannot), his speech is not presumptively protected. Instead, his First Amendment interests must outweigh "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568. "In performing the balancing, the statement will not be considered in a vacuum; the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987).

Here, Plaintiff admits that there was an ongoing investigation and that he was instructed not to talk about it with student-athletes. He also admits that he did not follow that instruction. Such interference could have far reaching consequences to

23

the University for possibly obstructing the investigation. Thus, the University has an interest in addressing potential interference with the investigation and averting future disruption to its football program because Plaintiff violated the directive. *Hedgepeth v. Britton*, 152 F.4th 789, 796 (7th Cir. 2025) (school's interest in avoiding disruption to its services and potential disruption in the future outweigh employee's speech interest.) The University also has a strong interest in ensuring that its work-related directives are followed, particularly in the context of an ongoing investigation. *Farhat*, 370 F.3d at 598 (upholding restriction on employee speech during an investigation). Plaintiff's disregard for those directives impairs the University's ability to ensure that its employees follow rules and do not interfere in the integrity of the investigation. *Rankin*, 483 U.S. at 388 ("whether the statement impairs discipline by superiors" is a relevant consideration); *Gillis v. Miller*, 845 F.3d 677, 687 (6th Cir. 2017) (public employer need not show "actual disruption" to prevail). Thus, the *Pickering* balancing test favors the University.

### E.   Plaintiff Fails to Adequately Plead a Civil Rights Conspiracy Claim (Count IV)

"[I]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 563 (6th Cir. 2011) (quotations omitted). Plaintiff must "allege with at least some degree of particularity overt acts" to support the claimed

conspiracy. *Toteff v. Vill. of Oxford*, 562 F. Supp. 989, 997 (E.D. Mich. 1983) (internal citations omitted). The pleading standard is "relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008).

The AC lacks the required particularity. Instead, each allegation involving Petitti and the alleged conspiracy between Petitti and Manuel are pled "upon information and belief," which is insufficient. (ECF No. 13, ¶¶ 53, 147, 156-62.) Other allegations only restate the elements of a conspiracy claim. (*Id.*, ¶¶ 284-87.) Plaintiff essentially concludes that a conspiracy existed because he was terminated. But Plaintiff's subjective belief that he was a "scapegoat" does not satisfy the strict pleading standard for asserting a civil conspiracy claim.

### F.      Injunctive Relief is a Remedy, Not a Claim (Count V).

Claim V should be dismissed because "injunctive and declaratory relief are remedies and not independent causes of action." *Turaani v. Sessions*, 316 F. Supp. 3d 998, 1015 (E.D. Mich. 2018).

### V.      Conclusion.

For all the reasons set forth above, the University Defendants respectfully request that the Court dismiss all claims against them, with prejudice.

> Respectfully submitted,
>
> */s/ Brian M. Schwartz (P69018)*
> Miller, Canfield, Paddock and Stone, P.L.C.
> schwartzb@millercanfield.comd
> *Attorneys for the University Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 3, 2026, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

*/s/ Brian M. Schwartz*
Brian M. Schwartz (P69018)