IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHRIS PARTRIDGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:26-CV-10821 |
| | ) | |
| UNIVERSITY OF MICHIGAN; | ) | Hon. Shalina D. Kumar |
| UNIVERSITY OF MICHIGAN | ) | |
| BOARD OF REGENTS; SANTA | ) | Mag. Judge Curtis Ivy, Jr. |
| ONO, in his official and individual | ) | |
| capacities; WARDE MANUEL, in | ) | |
| his official and individual capacities; | ) | |
| and TONY PETITTI, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT TONY PETITTI'S**
**MOTION TO DISMISS WITH PREJUDICE**

Defendant Tony Petitti moves under Federal Rule of Civil Procedure

12(b)(6) to dismiss with prejudice all claims in Plaintiff's Amended Complaint (the

"Complaint") against Petitti. Specifically, as set forth in the Brief in Support of

Defendant Tony Petitti's Motion to Dismiss with Prejudice (the "Brief in

Support"), Counts VI (Civil Conspiracy), VII (Negligence), VIII (Intentional

Infliction of Emotional Distress), IX (Defamation), and X (Tortious Interference

with a Business Relationship) should be dismissed in their entirety, and Counts IV

(Conspiracy to Violate Plaintiff's Rights to Free Speech and Expression and Due

Process) and V (Injunctive Relief) should be dismissed to the extent those Counts purport to advance a claim against Petitti. Please see the Brief in Support for discussion of the reasons warranting dismissal.

Pursuant to Local Rule 7.1(a), counsel for Petitti sent a detailed email to Plaintiff's counsel, describing the basis for this Motion. Concurrence was not obtained.

WHEREFORE, Defendant Tony Petitti asks the Court to grant this Motion and dismiss all claims in the Amended Complaint advanced against Petitti with prejudice.

Dated: August 4, 2026

By: /s/ Derek J. Linkous

David H. Hoffman
Tacy F. Flint
Thomas H. Collier
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000
david.hoffman@sidley.com
tflint@sidley.com
tcollier@sidley.com

Derek J. Linkous (P82268)
Susan McKeever (P73533)
BUSH SEYFERTH PLLC
100 West Big Beaver Road, Suite 400
Troy, MI 48084
(248) 822-7800
linkous@bsplaw.com
mckeever@bsplaw.com

*Attorneys for Defendant Tony Petitti*

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| CHRIS PARTRIDGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:26-CV-10821 |
| | ) | |
| UNIVERSITY OF MICHIGAN; | ) | Hon. Shalina D. Kumar |
| UNIVERSITY OF MICHIGAN | ) | |
| BOARD OF REGENTS; SANTA | ) | Mag. Judge Curtis Ivy, Jr. |
| ONO, in his official and individual | ) | |
| capacities; WARDE MANUEL, in | ) | |
| his official and individual capacities; | ) | |
| and TONY PETITTI, | ) | |
| | ) | |
| Defendants. | ) | |

---

**BRIEF IN SUPPORT OF DEFENDANT TONY PETITTI'S
MOTION TO DISMISS WITH PREJUDICE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

STATEMENT OF ISSUES PRESENTED ............................................................ vii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................ viii

INTRODUCTION ..................................................................................................1

ALLEGATIONS IN THE AMENDED COMPLAINT ...........................................3

LEGAL STANDARD .............................................................................................7

ARGUMENT .........................................................................................................8

I.      Partridge's Conspiracy Claims Should Be Dismissed (Counts 4, 6). ............8

        A.      In order to impute one alleged conspirator's conduct to another,
                a complaint claiming conspiracy must plead with specificity an
                agreement to act unlawfully. ...................................................................8

        B.      The Complaint fails to provide any specific allegations of
                an agreement between Petitti and Manuel to fire Partridge. ...............12

        C.      Separately, the Complaint fails to plead any agreement to
                engage in unlawful action. ..................................................................15

II.     The Tortious Interference Claim Fails Because Partridge Does
        Not Allege That Petitti Intended to Have Partridge Fired or That
        Petitti Caused Partridge's Termination (Count 10). ....................................16

III.    The Negligence Claim Fails Because the Complaint Does Not Allege
        Duty, Negligence, or Causation (Count 7). ..................................................19

IV.     The Defamation Claim Fails Because It Is Time-Barred, and Because
        the Supposedly Defamatory Statement Is Not Alleged (Count 9). ...............21

V.      The Intentional Infliction of Emotional Distress Claim Fails Because
        Partridge Does Not Allege Intent, Causation, or Conduct That Is
        Outrageous or Extreme (Count 8). ..............................................................23

VI.     The Injunctive Relief Count Is Invalid Against Petitti (Count 5). .................25

CONCLUSION ...................................................................................................25

ii

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Adamo Demolition Co. v. Int'l Union of Operating Eng'rs, Local 150,*
  *AFL-CIO*,
  3 F.4th 866 (6th Cir. 2021) ..................................................................22

*Admiral Ins. Co. v. Columbia Cas. Ins. Co.*,
  486 N.W.2d 351 (Mich. Ct. App. 1992)..............................................10

*Ames v. LaRose*,
  86 F.4th 729 (6th Cir. 2023) ................................................................25

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................7, 8, 22

*Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*,
  898 F.3d 710 (6th Cir. 2018) ...............................................................17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................7, 8, 22

*Bhan v. Battle Creek Health Sys.*,
  579 F. App'x 438 (6th Cir. 2014) ........................................................22

*Bickerstaff v. Lucarelli*,
  830 F.3d 388 (6th Cir. 2016) ...............................................................11

*Blick v. Ann Arbor Pub. Sch. Dist.*,
  105 F.4th 868 (6th Cir. 2024) .......................................................10, 13

*Bonds v. Philips Elecs. N. Am.*,
  613 F. App'x 469 (6th Cir. 2015)........................................................17

*In re Certified Question from Fourteenth Dist. Ct. of Appeals of Texas*
  *v. Ford Motor Co.*,
  740 N.W.2d 206 (Mich. 2007)..............................................................19

*Cooper-Keel v. Baker*,
  -- N.W.3d --, No. 370456, 2025 WL 1384809 (Mich. Ct. App. May
  13, 2025) ...............................................................................................23

iii

*Detroit Will Breathe v. City of Detroit*,
524 F. Supp. 3d 704 (E.D. Mich. 2021) ..............................................................16

*Fieger v. Cox*,
524 F.3d 770 (6th Cir. 2008) ........................................................................10, 16

*Friedman v. Dozorc*,
312 N.W.2d 585 (Mich. 1981)..............................................................................20

*Gamrat v. Allard*,
320 F. Supp. 3d 927 (W.D. Mich. 2018) ..............................................................13

*Ghanam v. Does*,
845 N.W.2d 128 (Mich. Ct. App. 2014)................................................................22

*Graham v. Ford*,
604 N.W.2d 713 (Mich. Ct. App. 1999)................................................................24

*Hall v. United Labs, Inc.*,
31 F. Supp. 2d 1039 (N.D. Ohio 1998) ................................................................19

*Handy-Clay v. City of Memphis*,
695 F.3d 531 (6th Cir. 2012) ..........................................................................8, 22

*Heyne v. Metropolitan Nashville Public Schools*,
655 F.3d 556 (6th Cir. 2011) ...............................................................................10

*Hill v. Sears, Roebuck & Co.*,
822 N.W.2d 190 (Mich. 2012)..............................................................................19

*Hooks v. Hooks*,
771 F.2d 935 (6th Cir. 1985) ...............................................................................10

*Howe v. Detroit Free Press, Inc.*,
555 N.W.2d 738 (Mich. Ct. App. 1996).................................................................20

*Huron Valley Hosp., Inc. v. City of Pontiac*,
650 F. Supp. 1325 (E.D. Mich. 1986) ..................................................................14

*Ickes v. Nexcare Health Sys., L.L.C.*,
178 F. Supp. 3d 578 (E.D. Mich. 2016) ...............................................................18

iv

*Kelly v. Daily Beast Co.*,
  No. 1:22-cv-482, 2022 WL 17546616 (W.D. Mich. Dec. 9, 2022) ...................22

*Kottler v. Deutsche Bank AG*,
  607 F. Supp. 2d 447 (S.D.N.Y. 2009) ...............................................................9

*Libertarian Party of Ohio v. Husted*,
  831 F.3d 382 (6th Cir. 2016) ...........................................................................14

*Lintz v. Skipski*,
  807 F. Supp. 1299 (W.D. Mich. 1992) .............................................................15

*McElwee v. Wharton*,
  7 F. App'x 437 (6th Cir. 2001) ........................................................................18

*McMillian v. Vliet*,
  374 N.W.2d 679 (Mich. 1985)..........................................................................21

*Mercurio v. Huntington Nat'l Bank*,
  16 N.W.3d 748 (Mich. Ct. App. 2023)..............................................................14

*Mino v. Clio Sch. Dist.*,
  661 N.W.2d 586 (Mich. Ct. App. 2003).......................................................17, 18

*Mitan v. Campbell*,
  706 N.W.2d 420 (2005) ....................................................................................21

*NOCO Co. v. OJ Com., LLC*,
  35 F.4th 475 (6th Cir. 2022) ............................................................................25

*Ogbonna-McGruder v. Austin Peay State Univ.*,
  91 F.4th 833 (6th Cir. 2024) ..............................................................................8

*Riggs v. Nat'l Collegiate Athletic Ass'n*,
  279 N.E.3d 924 (Ind. Ct. App. 2026) ...............................................................19

*Rowland v. Independence Vill. of Oxford, LLC*,
  294 N.W.2d 228 (Mich. 2022)..........................................................................19

*Salser v. Dyncorp Int'l Inc.*,
  170 F. Supp. 3d 999 (E.D. Mich. 2016) ...........................................................23

*Solek v. K & B Transp., Inc.*,
  No. 21-cv-10442, 2021 WL 4290181 (E.D. Mich. Sept. 21, 2021)...................24

*Spadafore v. Gardner*,
  330 F.3d 849 (6th Cir. 2003) ..............................................................11

*Thomas v. Montgomery*,
  140 F.4th 335 (6th Cir. 2025) ..............................................................7

*Turaani v. Wray*,
  988 F.3d 313 (6th Cir. 2021) ..............................................................9

*United Rentals (N. Am.), Inc. v. Keizer*,
  355 F.3d 399 (6th Cir. 2004) ..............................................................15

*Webster v. United Auto Workers, Loc. 51*,
  394 F.3d 436 (6th Cir. 2005) ..............................................................24

**Statutes**

M.C.L. § 600.5805 .................................................................................21

M.C.L. § 600.5827 .................................................................................21

**Other Authorities**

Fed. R. Civ. P. 8 ....................................................................................23

Fed. R. Civ. P. 12 ....................................................................................1

Fed. R. Civ. P. 12(b)(6)...........................................................................7

## STATEMENT OF ISSUES PRESENTED

I.      Do the Section 1983 conspiracy and civil conspiracy claims against Petitti fail because Partridge's injuries arising from his termination are not traceable to Petitti, and because the Complaint fails to allege with specificity an agreement between Petitti and Manuel to unlawfully terminate Partridge?

II.     Does the claim for tortious interference with a business relationship fail because the Complaint does not allege that Petitti intended to have Partridge fired, and because the University's discretionary decision to fire Partridge disrupts the causal chain as to Petitti?

III.    Does the negligence claim fail because the Complaint does not sufficiently plead any duty owed by Petitti to Partridge, because the Complaint does not allege facts allowing an inference that Petitti was negligent, and because the Complaint does not allege facts showing that any actions by Petitti were the proximate cause of the alleged injuries to Partridge?

IV.     Does the defamation claim fail because the claim is time-barred by the one-year period of limitations, and because Partridge fails to allege either the content of the statement at issue or facts showing that the statement was false and defamatory?

V.      Does the claim for intentional infliction of emotional distress fail because the Complaint does not allege the information Petitti allegedly conveyed to Manuel about Partridge or any facts showing that it was extreme or outrageous, because the Complaint does not allege that Petitti intended to harm Partridge or have him fired, and because the Complaint does not allege that Petitti's actions caused Partridge emotional distress?

VI.     Does the claim for injunctive relief, to the extent it is asserted against Petitti, fail because Petitti is a non-state actor with no power to grant the relief Plaintiff seeks, such that a decision against Petitti would not redress Partridge's asserted injury?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Conspiracy claims:*

*Bickerstaff v. Lucarelli*, 830 F.3d 388 (6th Cir. 2016)

*Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868 (6th Cir. 2024)

*Fieger v. Cox*, 524 F.3d 770 (6th Cir. 2008)

*Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556 (6th Cir. 2011)

*Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985)

*Lintz v. Skipski*, 807 F. Supp. 1299 (W.D. Mich. 1992)

*Turaani v. Wray*, 988 F.3d 313 (6th Cir. 2021)

*Tortious interference claim:*

*Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, 898 F.3d 710 (6th Cir. 2018)

*Bonds v. Philips Elecs. N. Am.*, 613 F. App'x 469 (6th Cir. 2015)

*Mino v. Clio Sch. Dist.*, 661 N.W.2d 586 (Mich. Ct. App. 2003)

*Negligence claim:*

*Hill v. Sears, Roebuck & Co.*, 822 N.W.2d 190 (Mich. 2012)

*In re Certified Question from Fourteenth Dist. Ct. of Appeals of Texas*, 740 N.W.2d 206 (Mich. 2007)

*McMillian v. Vliet*, 374 N.W.2d 679 (Mich. 1985)

*Defamation claim:*

M.C.L. § 600.5805(11)

*Mitan v. Campbell*, 706 N.W.2d 420 (Mich. 2005)

*Ghanam v. Does*, 845 N.W.2d 128 (Mich. Ct. App. 2014)

***Intentional infliction of emotional distress claim:***

*Salser v. Dyncorp Int'l Inc.*, 170 F. Supp. 3d 999 (E.D. Mich. 2016)

*NOCO Co. v. OJ Com., LLC*, 35 F.4th 475 (6th Cir. 2022)

***Injunctive relief claim:***

*Ames v. LaRose*, 86 F.4th 729 (6th Cir. 2023)

**INTRODUCTION**

Former University of Michigan football coach Chris Partridge claims that the University wrongfully terminated him in retaliation for his protected speech, and in violation of his due process rights. In his Amended Complaint (the "Complaint" or "Am. Compl."), Partridge goes off on a baseless tangent, attempting to drag Big Ten Conference Commissioner Tony Petitti into his discharge dispute. Partridge does not allege that Petitti had any authority to fire him, or even sought his termination. Nor does Partridge allege that Petitti knew about or had anything to do with Partridge's protected speech. The claims against Petitti do not meet the Rule 12 standard for stating a claim and must be dismissed.

First, Partridge's allegations are insufficient to state a claim for conspiracy, tortious interference, or negligence. The essence of Partridge's theory that Petitti is somehow responsible for his firing by the University relates to the University's 2023 lawsuit against the Big Ten after it sanctioned the University regarding an NCAA investigation into sign stealing. Partridge is thus contending that while the University and Big Ten were *adverse* to each other, the head of the Big Ten "conspired" with its litigation opponent to get an assistant football coach fired. But Partridge's allegations do not support any inference that Petitti engaged in such an implausible "conspiracy" or played any cognizable role in Partridge's termination. Rather, Partridge alleges only that Petitti told the University's Athletic Director, Warde

1

Manuel, that the Big Ten would disclose at the upcoming preliminary injunction hearing in that lawsuit "second-hand" information that the Big Ten had learned about Partridge. According to the Complaint, Manuel—not Petitti—then "offered" to dismiss the lawsuit and to fire Partridge. The Complaint does not allege that Petitti asked Manuel to fire Partridge, took any steps with regard to Partridge's termination, or planned or agreed with Manuel to violate any of Partridge's constitutional or contractual rights. To the contrary, the Complaint alleges that Manuel—not Petitti— made a "unilateral decision to fire Partridge," Am. Compl. ¶ 206, ECF No. 13, PageID.169, and that all steps related to Partridge's firing were performed by and through the University, without any involvement by Petitti, *id.* ¶¶ 164–89, ECF No. 13, PageID.158–65. And even if the Complaint's allegations could support an inference that Petitti's communications *influenced* Manuel and the University to terminate Partridge, that is not enough to state a claim under any of these causes of action.

Second, the Complaint is devoid of facts showing that anything Petitti did was wrongful. Most tellingly, Partridge never alleges the content of the second-hand information that Petitti supposedly threatened to reveal. Without such allegations of *fact*—as distinct from labels like "false" or "defamatory"—Partridge cannot state a claim on any of his causes of action. It is impossible to infer that the information was false, that it was defamatory, or that it had anything to do with Partridge's

2

purported protected speech. Nor does the Complaint allege how Petitti came to know the information, why or whether he had reason to doubt it, that he vouched for its truth—or even that the University did not already know it. Partridge thus cannot satisfy the pleading standard and all counts against Petitti must be dismissed.

Third, Petitti's alleged conduct is fully consistent with a good-faith effort by Petitti to settle a legal dispute. Petitti's and Manuel's organizations were litigation adversaries days before a contested hearing. The Complaint's allegations show that each acted independently and in his organization's interest—Petitti to end the lawsuit against the Big Ten, and Manuel to limit reputational harm to the University. The law is clear that where alleged conduct is at least as consistent with lawful, independent action as with an unlawful agreement, it cannot support a conspiracy claim. This, too, requires the dismissal of all counts against Petitti.

Partridge may believe his firing by the University was unfair, but his complaints do not support any relief against Petitti.

## ALLEGATIONS IN THE AMENDED COMPLAINT

Partridge alleges that in late October 2023, the NCAA notified both the Big Ten and the University of Michigan that the NCAA had begun an investigation into "highly credible" evidence of a wide-ranging, multi-year sign-stealing scheme orchestrated by a non-coaching member of the University's football program. Am. Compl. ¶¶ 116–17, ECF No. 13, PageID.150. In connection with the NCAA

3

investigation, Doug Gnodtke, Executive Assistant to the University's Athletics Director, asked Partridge to provide his personal cell phone for forensic analysis. *Id.* ¶ 122, ECF No. 13, PageID.151. Rather than comply, Partridge referred the request to his agent. *Id.* ¶ 123, ECF No. 13, PageID.151.

Partridge alleges that the University's Senior Assistant General Counsel told all University football program employees, including Partridge, not to communicate with any University football players about the NCAA investigation. *Id.* ¶¶ 132–33, ECF No. 13, PageID.152–153. Nevertheless, when a University football player approached Partridge to discuss the player's upcoming interview with the NCAA, Partridge communicated with the player despite the legal instruction he had received, advising the player to speak with his parents about getting a lawyer (and, he alleges, "to just be honest"). *Id.* ¶¶ 140–41, ECF No. 13, PageID.153–154. Partridge alleges that he had this conversation "in his individual capacity," on the theory that University counsel had only directed that "he could not speak on the topic in his official capacity." *Id.* ¶ 141, ECF No. 13, PageID.153. The Complaint does not allege that Petitti knew about this conversation.

In response to the evidence obtained through the NCAA investigation, the Big Ten determined that the University sign-stealing scheme violated the Big Ten's sportsmanship policy, notified the University of that decision on November 4, 2023, and gave the University a chance to respond before the Big Ten decided whether to

4

impose a disciplinary sanction. *Id.* ¶¶ 130, 145–46, ECF No. 13, PageID.152, 154. In response, the University disputed that the Big Ten had authority to act before the NCAA concluded its investigation. *Id.* ¶ 146, ECF No. 13, PageID.154. The Big Ten disagreed, and announced the discipline on November 10, 2023: the University's football team would have to play its remaining regular-season games without head coach Jim Harbaugh on the field. *Id.* ¶¶ 151–53, ECF No. 13, PageID.155–156.

Later that day, the University and Harbaugh sued the Big Ten and Petitti in Washtenaw County Circuit Court, seeking to preliminarily enjoin the Big Ten from imposing this discipline on the University. *Id.* ¶¶ 154–55, ECF No. 13, PageID.156. The court set a hearing for November 17, 2023. *Id.* ¶ 155, ECF No. 13, PageID.156.

Partridge alleges, on information and belief, that two days before the hearing—Petitti and Manuel engaged in settlement discussions. *Id.* ¶¶ 156–57, 159–63, ECF No. 13, PageID.155–158. During that discussion, "[u]pon information and belief, Petitti presented Manuel with uncorroborated, second-hand, inflammatory, and false information about Partridge and threatened to embarrass [the University] by presenting this information in open court at the injunction hearing." *Id.* ¶ 156, ECF No. 13, PageID.156. The Complaint concedes that Petitti told Manuel that, on the merits, the information would conclusively defeat the University's case against the Big Ten: "Petitti also suggested to Manuel that the information was likely to result in the . . . Circuit Court denying [the University] and Harbaugh's request for an

injunction." *Id.* ¶ 157, ECF No. 13, PageID.156. The Complaint says nothing about the content of the information that Petitti allegedly communicated about Partridge. *See id.* ¶¶ 156–57, ECF No. 13, PageID.156.

The Complaint alleges that the same day, "[u]pon information and belief, Manuel offered to fire Partridge and to dismiss [the University] and Harbaugh's legal claims against the Big Ten and Petitti. Upon information and belief, Manuel made this offer to protect his own job, which would be at risk if Petitti made the information he shared with Manuel public. Upon information and belief, in exchange, Petitti agreed not to publicly disclose the sensationalized information he had shared with Manuel, to issue a positive public statement about the parties resolving their dispute, and to do nothing further regarding the NCAA's 'sign-stealing' investigation." *Id.* ¶¶ 159–61, ECF No. 13, PageID.157. The Complaint further alleges "[u]pon information and belief" that Petitti, like Manuel, "made this agreement to protect his own job, which would be at risk if the University's lawsuit against the Big Ten continued." *Id.* ¶ 162, ECF No. 13, PageID.157. The Complaint does not allege that Petitti made any comment about Partridge in response to Manuel's statement that the University may fire Partridge.

The next day, the University and Harbaugh publicly announced that they had dropped the lawsuit. *Id.* ¶ 163, ECF No. 13, PageID.157–158. The day after that, Manuel terminated Partridge. *Id.* ¶ 165, ECF No. 13, PageID.158. The Complaint

concedes that this was "Manuel's unilateral decision." *Id.* ¶ 206, ECF No. 13, PageID.169. Manuel told Partridge he had been informed that Partridge had advised a certain football player not to be forthright with information regarding the NCAA investigation. *Id.* ¶ 168, ECF No. 13, PageID.158. Partridge subsequently received a letter from Gnodtke confirming his termination. *Id.* ¶ 175, ECF No. 13, PageID.159. Partridge went on to initiate a grievance proceeding under procedures laid out in the University's Standard Practice Guide. *Id.* ¶¶ 176–86, ECF No. 13, PageID.160–164. The University's Human Resources Department's Review Committee held a grievance hearing and upheld the termination decision. *Id.* ¶¶ 188–89, ECF No. 13, PageID.165.

Subsequently, others from the University told sportswriters that Partridge had been fired for destroying evidence. *Id.* ¶ 193, ECF No. 13, PageID.166. Partridge believes this episode has prevented him from working in college football. *Id.* ¶¶ 239–41, ECF No. 13, PageID.176. However, he was able to find employment as part of a Super Bowl-winning NFL team. *Id.* ¶ 243, ECF No. 13, PageID.177.

## LEGAL STANDARD

Under Rule 12(b)(6), the Court asks whether the complaint pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Thomas v. Montgomery*, 140 F.4th 335, 339 (6th Cir. 2025), *cert. denied sub nom.*,

*Thomas v. Kustoff*, 2026 WL 1052217 (U.S. Apr. 20, 2026). A claim is plausible only when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 556–57. A court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012) (citation modified); *see Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 839 (6th Cir. 2024).

## ARGUMENT

I.     **Partridge's Conspiracy Claims Should Be Dismissed (Counts 4, 6).**

     A.     **In order to impute one alleged conspirator's conduct to another, a complaint claiming conspiracy must plead with specificity an agreement to act unlawfully.**

Partridge's claims that Petitti conspired to violate his constitutional rights (Count 4) and his employment contract (Count 6) both seek to hold Petitti liable for an action—terminating Partridge—that the Complaint concedes was decided on and taken by Manuel and the University, not Petitti. Indeed, the Complaint alleges in detail that the termination was (i) the "unilateral decision" of one University Defendant (Manuel), Am. Compl. ¶ 206, ECF No. 13, PageID.169; (ii) communicated to Partridge in writing by another University employee (Gnodtke), *id.* ¶¶ 175, 177, ECF No. 13, PageID.159–160, 162–163; and (iii) later

8

confirmed by the University's Human Resources Department and its University Review Committee after a hearing, pursuant to the University's Standard Practice Guide, *id.* ¶¶ 178–88, ECF No. 13, PageID.163–165. Petitti is not alleged to have played any role in or had any awareness of any of the steps in this lengthy University termination process.

Generally speaking, one defendant cannot be held liable for the actions of another, because the second's independent conduct is not "traceable" to the first, as required for Article III standing. *See, e.g.*, *Turaani v. Wray*, 988 F.3d 313, 317 (6th Cir. 2021) ("A third party's legitimate discretion breaks the chain of constitutional causation.") (internal quotation marks omitted). Thus, even if Petitti's communication to Manuel purportedly influenced Manuel's decision, "[p]assing along information … is a distant cry from forcing action," as would be necessary to establish traceability. *Id.* at 316.

Partridge seeks to get around this Article III traceability problem by labeling Petitti's actions part of a "conspiracy," in a transparent attempt to impute the actions of other purported conspirators to Petitti. *See, e.g.*, *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 468 (S.D.N.Y. 2009) ("Conspiracy allegations represent a limited exception to the general rule of standing requiring a direct nexus between the defendant's actions and the plaintiff's injuries."). But the law is clear that labels alone are insufficient. Both Section 1983 conspiracy and civil conspiracy require

*specific* allegations establishing an *agreement* to do something unlawful through concerted action. *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (conspiracy claims must be pled with specificity, not conclusory allegations) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).

In a Section 1983 conspiracy, "at least two people must have agreed to a single plan to deprive the plaintiff of rights protected by § 1983," "each alleged coconspirator must have subjectively shared the plan's illegal objective," and "one of the coconspirators must have taken an overt act to carry out the plan." *Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868, 887 (6th Cir. 2024); *see also Hooks v. Hooks*, 771 F.2d 935, 943 (6th Cir. 1985) (plaintiff must allege that the non-state actor was "jointly engaged with state officials in a deprivation of civil rights"). Similarly, a "civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Id.* at 943–44; *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 486 N.W.2d 351, 358 (Mich. Ct. App. 1992) ("A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means.").

Under these standards, mere communications among the purported conspirators—as the Complaint alleges here—are not enough to support an inference that there was an "agreement" between them, as required to state a claim for conspiracy. In *Heyne v. Metropolitan Nashville Public Schools*, for example, the

10

Sixth Circuit held that "allegations about the Individual Defendants' conferring with one another at different points in [the plaintiff's] disciplinary process" did not constitute the necessary "specific allegations of a plan or agreement to violate his constitutional rights." 655 F.3d 556, 564 (6th Cir. 2011). This pleading standard is "relatively strict," and thus the allegation that defendants "conspired … to knowingly and intentionally deny [the plaintiff's] constitutional rights" is insufficient to state a claim because it is a mere legal conclusion "masquerading as factual allegation." *Id.* at 563–64. This also describes Partridge's allegations and requires dismissal of the conspiracy claims.

Likewise, in *Bickerstaff v. Lucarelli*, the Sixth Circuit affirmed dismissal of a § 1983 conspiracy claim because the alleged coconspirator "could not have plausibly shared in the 'general conspiratorial objective'" as to conduct he did not know about, and because facts equally consistent with independent, innocent conduct "undermine[d] any plausible allegation" of a common plan. 830 F.3d 388, 401 (6th Cir. 2016). Such allegations—like Patridge's here—are insufficient as a matter of law, because a conspiracy claim fails where the alleged conduct is just as consistent with independent conduct as it is with a conspiracy. *See id.*; *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (affirming summary judgment on a § 1983 conspiracy claim where plaintiffs alleged filing of false affidavits but produced no evidence that defendants acted in concert or pursuant to a single plan).

11

**B.      The Complaint fails to provide any specific allegations of an agreement between Petitti and Manuel to fire Partridge.**

Partridge's conspiracy claims fail because—although Partridge alleges Petitti *talked to* Manuel about Partridge—the Complaint fails to allege any *agreement* between Manuel and Petitti to fire Partridge. The only factual allegations about Petitti's alleged involvement in Partridge's termination are in paragraphs 156 through 163. There, Partridge alleges (solely on information and belief) the following sequence of events: (1) Petitti gave Manuel information (the Complaint does not say what) about Partridge, which would be disclosed at the upcoming preliminary injunction hearing, Am. Compl. ¶ 156, ECF No. 13, PageID.156; (2) Manuel then "offered to fire Partridge" and to dismiss the lawsuit in order to protect his own job, *id.* ¶¶ 159–60, ECF No. 13, PageID.157; and (3) Petitti agreed not to disclose the information about Partridge, and to make a public statement about the resolution of the lawsuit, in order to protect his own job, *id.* ¶¶ 161–62, ECF No. 13, PageID.157. That's it. While those allegations support an inference that the parties agreed to settle their lawsuit, they are far from the requisite "specific" allegations that Petitti and Manuel agreed to a single plan to undertake any action with respect to Partridge's termination—much less unlawful action.

Notably, there are no allegations that Petitti asked Manuel to fire Partridge, or even suggested it. There is no allegation that Petitti wanted Manuel to fire Partridge. There is no allegation that Petitti even mentioned the topic of employment

12

consequences for Partridge. Nor is there an allegation that Petitti conditioned resolution of the lawsuit or nondisclosure of the information about Partridge on Partridge's firing. Instead, the Complaint alleges that Petitti communicated the (unidentified) information about Partridge not as part of any single plan to violate Partridge's constitutional or contractual rights, but instead in an effort to induce the University and Harbaugh to drop their lawsuit. Am. Compl. ¶ 162, ECF No. 13, PageID.157. The Complaint even concedes that Petitti told Manuel that the University would lose its lawsuit on the merits if the information came out at the hearing: "Petitti also suggested to Manuel that the information was likely to result in the Washtenaw County Circuit Court denying [the University] and Harbaugh's request for an injunction." *Id.* ¶ 157, ECF No. 13, PageID.156. In short, far from establishing an agreement, the alleged facts are inconsistent with any "subjective[]" desire by Petitti to have Partridge fired. *Blick*, 105 F.4th at 887.

Similar failures have doomed Section 1983 conspiracy and civil conspiracy claims. In *Gamrat v. Allard*, the plaintiff alleged that legislative officials and private individuals met, communicated, and coordinated efforts against her during a highly public political scandal, but the court dismissed the conspiracy claim because the complaint alleged no facts showing that any defendant actually agreed or directed anyone to unlawfully eavesdrop, wiretap, or stalk the plaintiff. 320 F. Supp. 3d 927, 941–42 (W.D. Mich. 2018), *aff'd sub nom.*, *Gamrat v. McBroom*, 822 F. App'x 331

13

(6th Cir. July 29, 2020). Likewise, in *Libertarian Party of Ohio v. Husted*, a Republican political consultant coordinated with attorneys and party officials to challenge Libertarian candidates' ballot petitions and exchanged emails and other communications with the Ohio Director of Elections regarding petition information and the anticipated protest. Even so, the Sixth Circuit held that those communications did not establish that the Director shared any conspiratorial objective or had agreed to remove the candidates from the ballot. 831 F.3d 382, 397–99 (6th Cir. 2016). In short, mere contact, communication, and coordination—as Partridge alleges here—are insufficient to allege a conspiracy, absent facts showing that the defendant subjectively shared the illegal conspiratorial objective.[1]

Nor was Petitti required to *oppose* Partridge's firing to avoid a conspiracy charge. Even passive acquiescence to the state's directions cannot show that the non-state actor shared a common conspiratorial objective; instead, the plaintiff must allege facts showing *willful participation* by the non-state actor in joint action with

---

[1] *See also Huron Valley Hosp., Inc. v. City of Pontiac*, 650 F. Supp. 1325, 1343–46 (E.D. Mich. 1986)*, aff'd*, 849 F.2d 262 (6th Cir. 1988) (rejecting conspiracy claim despite allegations that competing hospitals and state officials coordinated through meetings, lobbying, and ongoing communications, because the conduct reflected ordinary regulatory cooperation rather than a conspiratorial agreement); *Mercurio v. Huntington Nat'l Bank*, 16 N.W.3d 748, 765 (Mich. Ct. App. 2023) ("none of the cited communications or actions involving LeFevre indicated that he was engaged in a *concerted* action with the non-bank defendants to commit fraudulent misrepresentation").

14

state officials to deprive others of constitutional rights. *Lintz v. Skipski*, 807 F. Supp. 1299, 1307 (W.D. Mich. 1992), *aff'd on other grounds*, 25 F.3d 304 (6th Cir. 1994).

Even if Petitti had *wanted* Partridge to be fired and had *asked* Manuel to fire him—neither of which is alleged—that would still be insufficient. As detailed above, conspiracy requires agreement on a common objective. But the Complaint does not allege that Petitti and Manuel shared any common objectives other than avoiding damage to their respective institutions from a contentious court hearing amid a media firestorm. Am. Compl. ¶¶ 160, 162, ECF No. 13, PageID.157. There is nothing plausibly conspiratorial or improper about this. The alleged communications and actions of Petitti and Manuel do not show a "single plan" to fire Partridge but rather show them working independently: to end the University's lawsuit, on Petitti's part, and to limit the reputational harm to the University, on Manuel's part.

C.   **Separately, the Complaint fails to plead any agreement to engage in unlawful action.**

Finally, the conspiracy claims fail for the independent reason that—even if the Complaint could somehow be read to allege an agreement related to terminating Partridge (which it cannot)—the Complaint fails to allege any common agreement to terminate Partridge for unlawful reasons or through unlawful means. "An essential element of a claim for … civil conspiracy is that the" purported conspirators engage in "concerted action 'to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means.'" *United Rentals (N. Am.), Inc. v.*

15

*Keizer*, 355 F.3d 399, 413 (6th Cir. 2004) (quoting *Feaheny v. Caldwell*, 437 N.W.2d 358, 365 (Mich. Ct. App. 1989)); *see also Detroit Will Breathe v. City of Detroit*, 524 F. Supp. 3d 704, 712 (E.D. Mich. 2021) (alleged coordination insufficient where not directed to "any unlawful action").

For example, there are no allegations that Petitti discussed how firing Partridge would violate some contractual or due process right. Nor are there allegations that Petitti's statement to Manuel about the evidence against Partridge was related in any way to Partridge's allegedly protected speech—indeed, the Complaint does not even plead the content of the "inflammatory" information about Partridge, nor does it allege that Petitti was aware of Partridge's purportedly protected speech. Petitti's sole alleged motive in communicating with Manuel is that he "made this agreement to protect his own job." Am. Compl. ¶ 162, ECF No. 13, PageID.157. That is not a "specific" allegation that Petitti entered into any agreement to infringe Partridge's rights, and thus fails to meet the "relatively strict" pleading requirements for conspiracy. *Fieger*, 524 F.3d at 776.

## II.     The Tortious Interference Claim Fails Because Partridge Does Not Allege That Petitti Intended to Have Partridge Fired or That Petitti Caused Partridge's Termination (Count 10).

The tortious interference claim fails because Partridge has not alleged that Petitti intended to get Partridge fired, and because the University's discretionary decision to fire Partridge disrupts the causal chain as to Petitti.

16

A tortious interference claim requires allegations that the defendant acted with the purpose or desire to cause the interference—and that the interference with another's business relationship was not merely a byproduct of a legitimate purpose, like commercial gain. *Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, 898 F.3d 710, 715–16 (6th Cir. 2018). Plaintiff must also allege the defendant's actions "were malicious or without justification." *Bonds v. Philips Elecs. N. Am.*, 613 F. App'x 469, 475 (6th Cir. 2015). Absence of such allegations means the claim fails. *See Mino v. Clio Sch. Dist.*, 661 N.W.2d 586, 598 (Mich. Ct. App. 2003) (evidence that defendant "said there were unsubstantiated rumors or allegations that [plaintiff] engaged in sexual improprieties" insufficient to show malice or lack of justification). "Michigan courts consistently have recognized that where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." *Bonds*, 613 F. App'x at 475 (citation modified).

Here, the Complaint does not support any inference that Petitti acted with malice for the purpose of having Partridge terminated, because it affirmatively alleges the opposite. The Complaint alleges that Petitti's purpose in communicating with Manuel about Partridge was to "pressure Defendant Manuel into causing the University's lawsuit against the Big Ten to be dismissed," and "to protect his own job, which would be at risk if the University's lawsuit against the Big Ten continued." Am. Compl. ¶¶ 161–62, 321, ECF No. 13, PageID.157, 189. Those

17

alleged purposes are legitimate business reasons, squarely inconsistent with any inference of malice toward Partridge.

Additionally, the University's independent decision to fire Partridge cuts off the causal chain, which is also fatal to Partridge's claim. Manuel made a "unilateral decision to fire Partridge," Am. Compl. ¶ 206, ECF No. 13, PageID.169, which was followed up by a number of communications and processes coming from the University's Human Resource Department and University Review Committee, *id.* ¶¶ 164–88, ECF No. 13, PageID.158–165. These express allegations do not support—and indeed refute—any inference that Petitti's actions were a "substantial factor" that compelled the University to fire Partridge. *McElwee v. Wharton*, 7 F. App'x 437, 438 (6th Cir. 2001) (affirming judgment on tortious-interference claim because employer exercised its own hiring judgment, and defendant's conduct was not a "substantial factor" in hiring decision, even where employer described it as "first or third most important factor" in its decision); *Mino*, 661 N.W.2d at 597–98 (affirming summary judgment because evidence that defendants conveyed unsubstantiated allegations to the employer, without more, was insufficient to demonstrate affirmative acts of tortious interference); *see also Ickes v. Nexcare Health Sys., L.L.C.*, 178 F. Supp. 3d 578, 599 (E.D. Mich. 2016) (granting summary judgment where plaintiff could not establish causation because "it was [the third party's] affirmative acts that led to Plaintiff's termination").

18

### III.    The Negligence Claim Fails Because the Complaint Does Not Allege Duty, Negligence, or Causation (Count 7).

The negligence claim fails because the Complaint does not plead any cognizable duty owed by Petitti to Partridge. "[T]here can be no tort liability unless a defendant owed a duty to a plaintiff." *Hill v. Sears, Roebuck & Co.*, 822 N.W.2d 190, 196 (Mich. 2012) (citation modified). Michigan law "does not stand for the proposition that everybody owes a duty to everybody else." *In re Certified Question from Fourteenth Dist. Ct. of Appeals of Texas v. Ford Motor Co.*, 740 N.W.2d 206, 213 n.10 (Mich. 2007) (citation modified). It instead requires "the existence of a legal relationship between parties by which the injured party is owed a duty by the other, and such duty must be imposed by law." *Rowland v. Independence Village of Oxford, LLC*, 974 N.W.2d 228, 229 (Mich. 2022) (citation modified).

The allegations establish no such legal relationship creating a relevant duty here. The only relationship alleged is that between a sports conference commissioner and an employee of a member collegiate institution. No Michigan authority identifies a duty arising from that relationship. And persuasive authorities from other states suggest no such duty exists. *See Riggs v. Nat'l Collegiate Athletic Ass'n*, 279 N.E.3d 924, 932 (Ind. Ct. App. 2026) (NCAA owed no duty to a football player at member institution, despite regulatory authority over member schools); *Hall v. United Labs, Inc.*, 31 F. Supp. 2d 1039, 1043 (N.D. Ohio 1998) (doctor and laboratory which analyzed random drug test results of terminated baking company

19

employee owed no duty to employee, applying Ohio law). Nor does any case establish that one person owes a duty to another merely because harms were allegedly foreseeable. *See Friedman v. Dozorc*, 312 N.W.2d 585, 589–94, 607 (Mich. 1981) (no duty where attorney filed unfounded litigation that damaged plaintiff's reputation, even if harms were foreseeable).

The claim also fails because Partridge has not alleged facts allowing an inference that Petitti was negligent. The Complaint alleges that the information was "uncorroborated, second-hand, inflammatory, and false," Am. Compl. ¶ 156, ECF No. 13, PageID.156, but alleges no facts about the content or source of the alleged information that would support these conclusory assertions, or that would support an inference that Petitti acted unreasonably in passing it on to Manuel. Nor does the complaint allege that Petitti represented to Manuel that the information was true. Without facts allowing an inference of negligence, this claim fails. *Accord Howe v. Detroit Free Press, Inc.*, 555 N.W.2d 738, 742 (Mich. Ct. App. 1996), *aff'd,* 457 Mich. 871 (1998) (no negligence in reproducing allegedly false article).

Finally, the negligence claim fails absent alleged facts showing that any actions by Petitti were the proximate cause of the alleged injuries to Partridge. Manuel made a "unilateral decision" to fire Partridge—not Petitti. Am. Compl. ¶ 206, ECF No. 13, PageID.169. And Petitti cannot plausibly be the proximate cause of the alleged harms to Partridge's reputation, because the Complaint alleges that (i)

20

Petitti only communicated the information privately (to Manuel) and (ii) agreed *not* to publicly disclose the information about Partridge. It was other parties, according to the Complaint, who relayed harmful information about Partridge to the press and to other college administrators, without any allegations that Petitti knew or should have known anything about this. These other actors are "intervening causes" that "actively operate[] in producing harm to another after the actor's negligent act or omission has been committed," thereby breaking the causal chain. *McMillian v. Vliet*, 374 N.W.2d 679, 682 (Mich. 1985) (citation modified).

**IV.    The Defamation Claim Fails Because It Is Time-Barred, and Because the Supposedly Defamatory Statement Is Not Alleged (Count 9).**

The defamation claim is time-barred. The period of limitations for defamation is one year. *See* M.C.L. § 600.5805(11). The claim accrues "when the wrong upon which the claim is based was done regardless of the time when damage results," and regardless of whether the defamatory statement is intentionally republished. *Mitan v. Campbell*, 706 N.W.2d 420, 422 (2005) (citation modified) (quoting M.C.L. § 600.5827) (citing §§ 600.5805(1), (9)). The Complaint alleges Petitti made his statements to Manuel on November 15, 2023, more than one year before Partridge filed suit, and even longer before Partridge amended the Complaint to add the defamation claim against Petitti. The claim is therefore time-barred.

The defamation claim also fails because Partridge fails to allege the content of the statement at issue, or facts showing that the statement was false and

21

defamatory. The Complaint never alleges the content of the information that Petitti supposedly threatened to disclose at the preliminary injunction hearing. *See* Am. Compl. ¶¶ 156–57, ECF No. 13, PageID.156. That omission is not a matter of detail. Without knowing what the information was, the Court cannot plausibly infer that it was false, defamatory, or related in any way to Partridge's alleged protected speech. Nor can the Court infer that Petitti knew the information was false, had reason to doubt its accuracy, or engaged in conduct that was otherwise wrongful, malicious, outrageous, or even negligent. Rule 8 requires factual allegations that permit a plausible inference of liability; speculation built upon an unidentified statement does not meet the standard. *See* Fed. R. Civ. P. 8; *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555–57, 570; *Handy-Clay*, 695 F.3d at 539.

Moreover, under Michigan law, Plaintiffs must allege the exact language that is supposedly defamatory. *Adamo Demolition Co. v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO*, 3 F.4th 866, 875 (6th Cir. 2021); *Kelly v. Daily Beast Co.*, No. 1:22-cv-482, 2022 WL 17546616, at *4 (W.D. Mich. Dec. 9, 2022) ("elements of a defamation claim must be specifically pleaded, including the allegations with respect to the defamatory words") (internal quotation marks omitted). The failure to allege *what* Petitti specifically uttered to Manuel dooms this claim as a matter of law. *See Bhan v. Battle Creek Health Sys.*, 579 F. App'x 438, 447 (6th Cir. 2014) (summary insufficient); *Ghanam v. Does*, 845 N.W.2d 128, 142 (Mich. Ct. App. 2014) (plaintiff

22

must plead "the exact language" alleged to be defamatory) (quoting *Thomas Cooley Law Sch. v. Doe 1*, 833 N.W.2d 331, 341 (Mich. Ct. App. 2013)).

**V.   The Intentional Infliction of Emotional Distress Claim Fails Because Partridge Does Not Allege Intent, Causation, or Conduct That Is Outrageous or Extreme (Count 8).**

The Complaint fails to allege facts meeting any of the elements of this claim: "(1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff." *Salser v. Dyncorp Int'l Inc.*, 170 F. Supp. 3d 999, 1005 (E.D. Mich. 2016) (quoting *Dalley v. Dykema Gossett PLLC*, 788 N.W.2d 679, 695 (Mich. Ct. App. 2010)); *see also Cooper-Keel v. Baker*, -- N.W.3d --, No. 370456, 2025 WL 1384809, at *2 (Mich. Ct. App. May 13, 2025), *appeal denied*, 26 N.W.3d 844 (Mich. 2025). The standard for meeting these elements is high: "the conduct complained of [must be] so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Salser*, 170 F. Supp. 3d at 1005.

First, the Complaint fails to allege extreme and outrageous conduct, because it does not allege the content of the information about Partridge that Petitti told Manuel, aside from the conclusory assertion that it was "inflammatory," "sensationalized," and "false." *See supra* at 5–6, 20. There are no alleged facts supporting these assertions, and courts have rejected claims with more specific

23

allegations. *See Webster v. United Auto Workers, Loc. 51*, 394 F.3d 436, 443–44 (6th Cir. 2005) ("extreme and outrageous conduct" standard not met where complaint alleged that defendants filed a defamation suit against plaintiff, refused to investigate his complaints, and told coworkers to "disassociate" from him).

Second, the Complaint fails to allege that Petitti intended to harm Partridge's reputation, or even to have him fired. Nor does the Complaint allege recklessness by Petitti. The Complaint not only fails to allege any facts about what information Petitti communicated to Manuel, it also fails to allege facts suggesting that Petitti knew the unspecified information was false, or that he was on notice that it was probably false. Conclusory allegations of intent or recklessness are insufficient. *See Solek v. K & B Transp., Inc.*, No. 21-cv-10442, 2021 WL 4290181, at \*12 (E.D. Mich. Sept. 21, 2021) (business practices and decisions insufficient to allege intent); *Graham v. Ford*, 604 N.W.2d 713, 716–17 (Mich. Ct. App. 1999) (workplace insults, indignities, and petty oppressions insufficient to allege intent).

Third, the Complaint does not sufficiently plead that Petitti's actions caused Partridge emotional distress. The Complaint includes no specific facts supporting Partridge's bare assertion that he experienced emotional distress, nor facts suggesting that Petitti was the cause of any such emotional distress. Petitti did not fire Partridge. He did not even *speak* with Partridge. Indeed, the Complaint alleges that Petitti agreed not to publicly disclose the information about Partridge. And the

24

University's alleged unilateral decision to fire Partridge cuts off the causal chain as to Petitti. *See NOCO Co. v. OJ Com., LLC*, 35 F.4th 475, 487 (6th Cir. 2022) (independent complaint, investigation, and actions of claimant "broke the causal chain and relieved [defendant] of any liability"). The same is true for the alleged statements about Partridge made by others to the press or college administrators, without any alleged connection to statements or actions by Petitti.

## VI.   The Injunctive Relief Count Is Invalid Against Petitti (Count 5).

Finally, if Partridge intended to advance the claim for *Ex Parte Young* injunctive relief against Petitti, it must be dismissed because the Complaint does not allege that Petitti, a non-state actor, has power to grant the requested relief. *See* Am. Compl. ¶¶ 294–95, ECF No. 13, PageID.185; *Ames v. LaRose*, 86 F.4th 729, 733 (6th Cir. 2023) (complaint "fails at the pleading stage" if "a favorable decision" against the defendant would not redress the asserted injury).

## CONCLUSION

For the foregoing reasons, all Counts against Petitti should be dismissed.

Dated: August 4, 2026

David H. Hoffman
Tacy F. Flint
Thomas H. Collier
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000
david.hoffman@sidley.com
tflint@sidley.com
tcollier@sidley.com

By: /s/ Derek J. Linkous

Derek J. Linkous (P82268)
Susan McKeever (P73533)
BUSH SEYFERTH PLLC
100 W. Big Beaver Road, Suite 400
Troy, MI 48084
(248) 822-7800
linkous@bsplaw.com
mckeever@bsplaw.com

*Attorneys for Defendant Tony Petitti*

25