2001 WL 865075
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Appeals of Michigan.

Wanda W. LIU, Plaintiff-Appellant,
v.
Bennett STONE, Defendant-Appellee.
Wanda W. LIU, Plaintiff-Appellant,
v.
UNIVERSITY OF MICHIGAN BOARD OF REGENTS, Defendant-Appellee.

Nos. 224784, 224785.
|
July 31, 2001.

Before: NEFF, P.J., and O'CONNELL and R.J. DANHOF,[*] JJ.

**Opinion**

PER CURIAM.

***1** These related sexual harassment and wrongful termination cases were consolidated for trial. That court dismissed plaintiff's claims as to both defendants pursuant to MCR 2.116(C)(10). Plaintiff appeals as of right from that judgment, asserting that there are genuine issues of disputed material fact sufficient to preclude judgment as a matter of law We affirm.

Plaintiff asserts that she established the elements of a prima facie case of sexual harassment based upon the theory that defendants' actions created a hostile work environment. The Michigan Civil Rights Act (CRA), prohibits discrimination based upon sex. MCL 37.2102. Discrimination based upon sex is defined to include sexual harassment. MCL 37.2103(i). Sexual harassment is defined, for purposes of a hostile work environment claim, to be

> [u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:
>
> (iii) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment. [MCL 37.2103(i); *Chambers v. Trettco, Inc,* 463 Mich. 297, 310; 614 NW2d 910 (2000).]

Thus, in order to prove a prima facie case of sexual harassment based on the theory that a plaintiff was subjected to a hostile work environment, a plaintiff must demonstrate that (1) the plaintiff is a member of a protected class, (2) the plaintiff was subjected to communication or conduct on the basis of sex, (3) the plaintiff was subjected to unwelcome sexual conduct or communication, (4) the unwelcome sexual conduct or communication was intended to or did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment, and (5) respondeat superior. *Radtke v. Everett,* 442 Mich. 368, 382-383; 501 NW2d 155 (1993); *Chambers, supra* at 311. We affirm the trial court's decision because we find that plaintiff was not subjected to unwelcome sexual conduct or communication.

The CRA defines sexual harassment as unwelcome "sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature." MCL 37.2103(i). In *Corley v. Detroit Bd of Ed,* ___ Mich.App ___; ___ NW2d ___ (Docket No. 218528, issued 5/15/01), slip op p 4-5, this Court very recently discussed the boundaries of the conduct which will support a sexual harassment claim. In that case, threats of losing a job made to the plaintiff by one of the defendants, who was also her former lover, along with intimidation and indirect threats by a second defendant who was the first defendant's current lover, were communications and conduct "of a sexual nature" sufficient to preclude summary disposition because they devolved from plaintiff's former romantic relationship with one of the defendants. The *Corley* Court emphasized the existence of the former romantic relationship between the plaintiff and her former lover.

***2** In the present case, there are no allegations in this case that Stone ever made sexually suggestive remarks or that he made any sexual advances. Furthermore, unlike *Corley,* where the conduct was found to be sexually-based, in this case there is no evidence of a prior relationship between plaintiff and Stone. None of Stone's statements or conduct relates to any type of sexual matter on the order of sexual advances or

requests for sexual favors. In fact, many of his actions, while allegedly taking place near plaintiff, were not specifically directed at her. Finally, unlike *Corley,* the alleged harassment in this case did not emanate from a person in a supervisory position. Thus, we agree with the trial court that the actions were not "of a sexual nature." Defendants were therefore entitled to judgment as a matter of law.

Plaintiff also asserts that the university breached an implied contract of "just cause" employment when it dismissed her. We disagree.

In Michigan, employment relationships are presumed to be terminable at the will of either party. *Lytle v. Malady (On Rehearing),* 458 Mich. 153, 163; 579 NW2d 906 (1998). This presumption may be rebutted by proof that either a contract for a definite term exists or proof that a contract prevents discharge without just cause. *Id.* at 164. Michigan courts have recognized three ways by which a plaintiff may prove such a contractual obligation on the part of her employer:

> (1) proof of "a contractual provision for a definite term of employment or a provision forbidding discharge absent just cause"; (2) an express agreement, either written or oral, regarding job security that is clear and unequivocal; or (3) a contractual provision, implied at law, where an employer's policies and procedures instill a "legitimate expectation" of job security in the employee. [*Id.*]

Plaintiff relies upon the third manner in this case to prove that she enjoyed a contract which prohibited her termination for anything less than just cause.

In *Lytle,* our Court explained the procedure for determining whether an employee had a legitimate expectation of just-cause employment as follows:

> [w]e have recognized a two-step inquiry to evaluate legitimate-expectations claims. The first step is to decide "what, if anything, the employer has promised," and the second requires a determination of whether that promise is "reasonably capable of instilling a legitimate expectation of just-cause employment...." [*Id.* at 164-165 (quoting *Rood v. General Dynamics Corp,* 444 Mich. 107, 138-139; 507 NW2d 591 (1993)).]

The *Lytle* Court went on to explain that not all statements by an employer will be construed as a promise. *Lytle, supra,* 458 Mich. at 165. Instead, a promise is a "manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made," and "[a] lack of specificity of policy terms or provisions ... is grounds to defeat any claim that a recognizable promise in fact has been made." *Id.* (citations omitted).

***3** Plaintiff bases her claim of just-cause employment on language contained in the definitions section of the university's standard practice guide. In that section, "discharge" is defined as "dismissal of a staff member for misconduct, incompetence, or other good reason." Based on this language, plaintiff contends that "an implied contract of just-cause dismissal only was created." However, there is no manifestation of intent to be bound by this definition. Nothing in the definition indicates that the university intended this definition to be a promise to discharge employees only for just cause. Moreover, "discharge" is not the only form of dismissal. Within the same section of the guide, "termination" is defined as "the ending of the employment relationship at the initiative of the staff member or the university *for any reason,* including misconduct" (emphasis added). Therefore, in the absence of specific oral statements or written contractual terms, the standard practice guide alone cannot be reasonably interpreted to create a promise of just-cause employment for the university's employees.

Lastly, there is no indication that plaintiff received the standard practice guide during employment negotiations or discussions involving oral assurances of job security. *Lytle, supra,* 458 Mich. at 167. Thus, plaintiff could not have reasonably relied on it for an implied promise of just-cause employment. The trial court did not err when it concluded that plaintiff had failed to support her claim of just-cause employment.

Affirmed.

**All Citations**

Not Reported in N.W.2d, 2001 WL 865075

Footnotes

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.