**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| CHRIS PARTRIDGE,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF MICHIGAN; UNIVERSITY OF MICHIGAN BOARD OF REGENTS; SANTA ONO, in his official and individual capacities; WARDE MANUEL, in his official and individual capacities; and TONY PETITTI,<br><br>Defendants. | ) | Case No. 4:26-cv-10821<br><br>Hon. Shalina D. Kumar<br><br>Mag. Judge Curtis Ivy, Jr. |

---

**REPLY BRIEF IN SUPPORT OF DEFENDANT TONY PETITTI'S MOTION TO DISMISS WITH PREJUDICE**

## TABLE OF CONTENTS

ARGUMENT .......... 1

I. The Conspiracy Claims Fail (Counts 4, 6). .......... 1

II. The Tortious Interference Claim Fails (Count 10). .......... 3

III. The Negligence Claim Fails (Count 7). .......... 5

IV. The Intentional Infliction of Emotional Distress Claim Fails (Count 8) .......... 6

CONCLUSION .......... 7

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Blick v. Ann Arbor Pub. Sch. Dist.*,
105 F.4th 868 (6th Cir. 2024) ....................1, 3

*Bonds v. Philips Elecs. N. Am.*,
613 F. App'x 469 (6th Cir. 2015) ....................4

*In re Certified Question*,
740 N.W.2d 206 (Mich. 2007)....................5

*Ellis v. Dykema Gossett PLLC*,
No. 301131, 2013 WL 3717799 (Mich. Ct. App. July 16, 2013)....................7

*In re Flint Water Cases*,
752 F. Supp. 3d 832 (E.D. Mich. 2024) ....................5, 6

*Harcz v. Boucher*,
763 F. App'x 536 (6th Cir. 2019) ....................1, 2

*Howe v. Detroit Free Press, Inc.*,
555 N.W.2d 738 (Mich. Ct. App. 1996)....................6

*Mekani v. Homecomings Fin., LLC*,
752 F. Supp. 2d 785 (E.D. Mich. 2010) ....................1

*Mino v. Clio Sch. Dist.*,
661 N.W.2d 586 (Mich. Ct. App. 2003)....................4

*Roberts v. Auto-Owners Ins. Co.*,
374 N.W.2d 905 (Mich. 1985)....................6, 7

*Siefert v. Hamilton Cnty.*,
951 F.3d 753 (6th Cir. 2020) ....................3

*Tata Consultancy Servs. v. Sys. Int'l, Inc.*,
31 F.3d 416 (6th Cir. 1994) ....................5

Like his abandoned defamation claim (Count 9), all of Partridge's claims against Petitti should be dismissed.[1] The Complaint does not allege Petitti asked Manuel to fire Partridge, conditioned settlement of the lawsuit on Partridge's termination, or participated in the University's decision to fire Partridge or process for doing so. The Complaint alleges only that Petitti communicated information to Manuel for a legitimate business purpose (resolving litigation) and that Manuel made a "unilateral decision to fire Partridge" thereafter. These allegations do not suffice to state a claim.

## ARGUMENT

### I. The Conspiracy Claims Fail (Counts 4, 6).

There is no dispute that, to state a §1983 or civil conspiracy claim, Partridge must allege that Manuel and Petitti agreed to a single plan to harm Partridge. *See* ECF No. 29, PageID.429–430, 433–434; *see also Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868, 887 (6th Cir. 2024). Partridge argues that it is enough that "Manuel placed Partridge's termination on the table, and Petitti accepted an arrangement that included that termination." ECF No. 29, PageID.432. Not so.

In *Harcz v. Boucher*, the Sixth Circuit affirmed dismissal where a complaint alleged that defendant planners of a public event communicated to police concerns

---

[1] *Mekani v. Homecomings Fin., LLC*, 752 F. Supp. 2d 785, 790 n.2 (E.D. Mich. 2010) (abandoned claims should be dismissed).

about potentially disruptive protesters and "agreed" with police that the officers "would exclude suspected protestors from the event." 763 F. App'x 536, 539 (6th Cir. 2019). The Sixth Circuit held that, even though the complaint "use[d] the word 'agreed,'" "the substantive allegations describe [the event planners] merely relaying their concerns about disruption to the police." *Id.* at 541. Those allegations "support[ed] the inference that the state defendants formed their plan to handle protestors *independently*, alleging that the police developed an 'operational plan' and made the decision to deploy officers on their own," and "[t]he police officers' decision to inform [the event planners] about their plan—*without soliciting any input whatsoever*—does not rise to the level of conspiracy." *Id.* (emphases added).

So too here. Although the Complaint uses the word "agreed," the substantive allegations indicate that Petitti merely communicated information about Partridge to Manuel; that Manuel acted "unilateral[ly]"[2] (i.e., *independently*) to fire Partridge; and that Manuel's decision to inform Petitti that the University would terminate Partridge—*without soliciting Petitti's input*—does not rise to the level of conspiracy.

[2] According to the Opposition, even though the Complaint alleges Manuel's decision to "terminate Partridge" was "unilateral," this express allegation should not be understood to say anything about "whether Petitti's conduct contributed to the decision." ECF No. 29, PageID.417. But the Complaint not only repeatedly uses the word "unilateral," *see* ECF No. 13, PageID.168–169 ¶¶ 203, 206, it also makes no allegation that Petitti forced, induced, or asked Manuel to fire Partridge—or said anything at all about what should happen vis-à-vis Partridge's employment.

*See* ECF No. 13, PageID.156–157, ¶¶ 156–162; *id.* at PageID.169 ¶ 206.

Nor does the Complaint allege Petitti shared a conspiratorial objective to violate Partridge's rights. The Opposition vaguely contends that "[t]he November 15-17 Events connect Petitti not merely to the termination, but to the circumstances that rendered it constitutionally deficient." ECF No. 29, PageID.433. But tellingly, the Opposition cites nothing suggesting Petitti shared Manuel's alleged objective to fire Partridge unlawfully (or at all)—or that Petitti had any awareness of or role in the process being afforded to Partridge. No such allegations exist, dooming the conspiracy claims. *See Blick*, 105 F.4th at 888 (requiring "specific allegations connecting that defendant to" the objective of depriving plaintiff of constitutional rights); *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 768 (6th Cir. 2020) (affirming dismissal where "there are no factual allegations that the parties agreed to the general conspiratorial objective of violating the Sieferts' constitutional rights") (cleaned up).

In fact, the Complaint alleges that Petitti communicated with Manuel to achieve an entirely different objective, unrelated to Partridge's rights—"to force [the University] and Harbaugh to dismiss" the lawsuit. ECF No. 13, PageID.138 ¶ 52. Partridge's own allegations, therefore, foreclose his conspiracy claim.

## II. The Tortious Interference Claim Fails (Count 10).

The Opposition does not contest that a tortious interference claim requires the plaintiff to allege the interference was both intentional and improper. ECF No. 29,

PageID.414. But the Complaint alleges neither that Petitti intended to have Partridge fired nor that he acted for any improper purpose.[3] To the contrary, Petitti communicated secondhand information about Partridge for the legitimate business purpose of resolving the lawsuit. ECF No. 13, PageID.138 ¶ 52; *id.* at PageID.157 ¶¶ 161–62. That is not tortious interference under Michigan law. *See Mino v. Clio Sch. Dist.*, 661 N.W.2d 586, 598 (Mich. Ct. App. 2003) (no tortious interference where plaintiff alleged defendant interfered with his employment prospects by communicating "unsubstantiated rumors" of "sexual improprieties," but failed to allege "an affirmative act . . . done with malice or without justification").

Moreover, "Michigan courts consistently have recognized that where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference"—even where the action leads to the plaintiff's termination. *Bonds v. Philips Elecs. N. Am.*, 613 F. App'x 469, 474–76 (6th Cir. 2015). Here, Petitti sought one thing: dismissal of the lawsuit. He did not solicit termination of Partridge, which was Manuel's own choice. ECF No. 13,

[3] Partridge argues the Court should *infer* Petitti intended to interfere, because "once Manuel offered Partridge's termination as part of the bargain and Petitti accepted," Petitti knew Partridge would be fired. ECF No. 29, PageID.415 (citing *Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, 898 F.3d 710, 718 (6th Cir. 2018)). But the Complaint alleges Petitti interfered with Partridge's business expectancy by communicating secondhand information about Partridge to Manuel, ECF No. 13, PageID.189 ¶ 321—which occurred *before* Manuel offered to fire Partridge, *id.* at PageID.156–157, ¶¶ 156–162. Any knowledge gained from Manuel's offer did not exist at the time of the alleged interference.

PageID.156–157, ¶¶ 156–162; *id.* at PageID.169 ¶ 206. For that reason, Partridge is mistaken in describing *Tata Consultancy Servs. v. Sys. Int'l, Inc.*, 31 F.3d 416 (6th Cir. 1994), as the "closer analogy" to this case. ECF No. 29, PageID.416. In *Tata*, the defendant actively and knowingly solicited the plaintiff company's employees to breach their employment contracts with plaintiff—and that "'active solicitation' . . . may render improper that which would otherwise be proper." *Id.* at 424. There is no such allegation here, and Count 10 should be dismissed.

## III. The Negligence Claim Fails (Count 7).

It is axiomatic that negligence requires a showing that the defendant owed plaintiff a duty of care. Partridge argues that a duty arose from Petitti's "wide discretion to investigate potential offensive conduct within the conference." ECF No. 29, PageID.418 (cleaned up). But Partridge cites no Michigan law (and there is none) for the proposition that Petitti's investigative authority somehow gives rise to a duty of care to individual assistant coaches within the Big Ten member institutions.

Nor does any duty arise because harm was supposedly foreseeable: "The mere fact that an event may be foreseeable does not impose a duty." *In re Certified Question*, 740 N.W.2d 206, 212 (Mich. 2007) (citation omitted). Partridge's principal authority, *In re Flint Water Cases*, confirms that "Michigan relies more on the relationship between the parties than foreseeability of harm when determining

whether a duty exists." 752 F. Supp. 3d 832, 840 (E.D. Mich. 2024) (cleaned up).[4]

Nor does Partridge identify any authority holding that Petitti had any duty to investigate secondhand information about Partridge before relaying it to the University, which remained free to decide what to do with it. *Howe v. Detroit Free Press, Inc.*, held that defendant had "no duty to independently verify the accuracy" of an article it reproduced. 555 N.W.2d 738, 740–41 (Mich. Ct. App. 1996), *aff'd*, 586 N.W.2d 85 (Mich. 1998). No case Partridge cites is to the contrary. And the Opposition's discussion of the process afforded by the Big Ten in sanctioning the University over sign-stealing is irrelevant to the discipline imposed on Partridge by the University (not the Big Ten).

## IV. The Intentional Infliction of Emotional Distress Claim Fails (Count 8).

Partridge can cite no authority suggesting that engaging in confidential settlement communications involving secondhand information about a litigation adversary's employee constitutes conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Roberts v. Auto-*

[4] The *Flint Water* court denied summary judgment on the existence of duty based on evidence that defendants' work to improve the Flint water system was "in large part for the benefit of customers and users of Flint's water system, including Plaintiffs," thus establishing a "limited relationship" between plaintiffs and defendants. 752 F. Supp. 3d at 849. Partridge does not allege that Petitti's work as Big Ten commissioner is in large part for the benefit of assistant coaches employed by member institutions, or that any such limited relationship existed between them.

*Owners Ins. Co.*, 374 N.W.2d 905, 908–09 (Mich. 1985). To the contrary, a defendant "is *never* liable . . . where he has done no more than to insist upon his legal rights in a permissible way," even if he knows emotional distress will result. *Id.* at 909 (emphasis added). Petitti is not alleged to have done any worse here.

The Opposition cites *Ellis v. Dykema Gossett PLLC*, No. 301131, 2013 WL 3717799 (Mich. Ct. App. July 16, 2013), for the proposition that "conduct threatening the plaintiff's livelihood and professional reputation" may qualify. ECF No. 29, PageID.424–425. But in *Ellis*, the defendant knew the plaintiff had engaged in no wrongdoing, yet filed a baseless lawsuit against him and submitted false reports about him to regulatory agencies—all so the defendant could fire plaintiff without losing his book of business. 2013 WL 3717799, at *7. The appellate court declined to disturb a jury's finding that this conduct was extreme. *Id. Ellis* is not comparable.

## CONCLUSION

For the foregoing reasons, all Counts against Petitti should be dismissed.

Dated: September 29, 2026

By: /s/ *Derek J. Linkous*

David H. Hoffman
Tacy F. Flint
Thomas H. Collier
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000
david.hoffman@sidley.com
tflint@sidley.com
tcollier@sidley.com

Derek J. Linkous (P82268)
Susan McKeever (P73533)
BUSH SEYFERTH PLLC
100 W. Big Beaver Road, Suite 400
Troy, MI 48084
(248) 822-7800
linkous@bsplaw.com
mckeever@bsplaw.com

*Attorneys for Defendant Tony Petitti*